Argued and submitted October 11, 2013, reversed and remanded
January 2, 2014

In the Matter of N. D. A. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. D. G.,
aka A. D. S.,
*Appellant.*

Douglas County Circuit Court
1000185;
Petition Number 12JU130TPR;

In the Matter of G. A. M., Jr.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. D. G.,
aka A. D. S.,
*Appellant.*

Douglas County Circuit Court
1100376;
Petition Number 12JU193TPR;
A154216

317 P3d 950

Shannon Storey, Senior Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Valerie Colas, Deputy Public Defender, Office of Public Defense Services.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and De Muniz, Senior Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Mother appeals from the juvenile court's order denying her motion to set aside its default judgment terminating her parental rights to her two children. For the reasons that follow, we conclude that the court abused its discretion in denying mother's motion, and we reverse and remand to the court for further proceedings.

## I. PROCEDURAL HISTORY

The relevant facts are procedural and not in dispute. The procedural history has three major components: (1) the termination proceedings for the children ending in a default judgment, (2) mother's attempted appeal of that judgment, which we dismissed, and (3) mother's resultant motion to set aside the judgment, which the juvenile court denied, leading to this appeal.

A. *The termination petitions and default judgment*

The Department of Human Services (DHS) initiated termination of parental rights (TPR) proceedings for mother's two children in two separate cases on two different schedules. DHS filed a petition to terminate mother's parental rights to N in May 2012. In June, mother was served with the petition regarding N, along with a summons ordering mother to personally appear on July 24, 2012, "and at any subsequent court-ordered hearing" to "admit or deny the allegations of the petition" regarding N. In July, DHS filed a second petition to terminate mother's parental rights to G. Later that month, mother was served with the petition as to G, as well as the same form of summons, but that one ordered her to appear on August 28.

Mother did not appear as summoned on July 24, the initial appearance in N's case. Accordingly, DHS stated that it intended to move for default, and the court scheduled a TPR *prima facie* hearing for September 10, 2012. DHS served its motion for a default order as to N on mother's court-appointed attorney. The court granted the motion and entered an order of default in N's case in late July.

Mother did appear on August 28, the initial appearance in G's case. Mother denied the allegations contained in

the petition, informed the court that she no longer wanted to be represented by her court-appointed counsel, and stated that she was in the process of retaining an attorney named Megan Shift who, according to mother, had agreed to represent her. The court informed mother that retained counsel would need to file a notice of appearance within 10 days. The court then scheduled the TPR trial regarding G for December 18, 2012.

DHS then moved for an order postponing the September 10 *prima facie* hearing regarding N to allow any private counsel mother retained to timely file an appearance. The court granted the motion and reset the hearing for October 8, 2012. Next, later in September, DHS moved and the juvenile court agreed to consolidate N's and G's cases. At the same time, the court again changed the date of the *prima facie* hearing regarding N, setting it on December 18, the same date of the previously scheduled TPR trial regarding G.

DHS also subpoenaed mother to appear at the hearing scheduled in late September for N's father's initial appearance. Father did not appear, but mother did. DHS stated that it had subpoenaed mother due to its concern that she would appear at trial without counsel and ask for a continuance. Mother assured the court that she had raised half of the money needed to retain Shift and that she anticipated raising the remainder "[h]opefully by next month." Mother declined the court's invitation to accept a court-appointed lawyer. The court then directed mother to appear on October 23 to update the court on her progress and cautioned mother that she needed representation.

On October 23, however, mother failed to appear, and DHS requested that the court find mother in default. DHS argued that, by statute, if parents fail to "appear as ordered in all appearances in a termination case they can be found in default." The attorney for the children agreed and suggested that the court set the *prima facie* hearing for both G and N on December 18, because mother had notice of that trial date for G's case. DHS then added that, although at the September hearing, mother "had indicated she was hiring Megan Shift who was an attorney out of Salem[,] [a]ccording to the Bar Journal there is no one that's even

remotely along those lines with that name in the State of Oregon[.]" The court then ordered that the December 18 proceeding would serve as the *prima facie* hearing for both children. Thereafter, the court entered a default order against mother in G's case based on her failure to appear at the status hearing on October 23.

More than two weeks later, on November 8, mother submitted a letter to the court requesting a postponement of the December 18 proceeding until February 2013. She told the court that she needed to raise additional money to retain counsel. DHS submitted a written objection, arguing that mother had not filed a notice of representation and that there was not good cause to allow a continuance.

The court denied mother's motion by issuing a notice on December 5 indicating that the *prima facie* hearing remained scheduled for December 18. Under the caption "Additional Information," the notice read, in part, "As to Mother & Mother's Motion to Postpone Trial." The notice also stated, "Failure to appear at the [December 18 hearing] may result in an order being rendered against you in this case."

Mother appeared in court on December 18. The juvenile court told mother that, because she had failed to appear at a hearing in each of her two cases, the court had entered an order of default against her in both cases. The court also informed mother that, "[w]hen a person is served and they don't make an appearance, then an order of default is entered. So long as that order of default stands, then the person is not entitled to be heard in future proceedings[.]" Mother protested, "Even though I wasn't notified by the Court until the (inaudible)" and "(inaudible) completed everything." The court then acknowledged that mother had appeared for the first appearance in G's case but explained that DHS was entitled to a default order. Apparently addressing mother's concern about the denial of her requested continuance, the court stated to mother:

> "Now, while I was gone you wrote a letter requesting that the trial—I'm not sure exactly if you were—be continued and that's what the state objected to, but the truth of the matter is if I had been here and somebody had shown me this letter * * * I would have said mother is in default so, so

long as that order of default stands, she's not entitled to a trial anyway."

The court continued, "[t]here's a lot of confusion here and you're representing yourself and you're here and basically they are entitled today, if they choose to, to go ahead without you." Mother then declined an invitation from the court to accept court-appointed counsel, stating that she still intended to retain private counsel. The court acknowledged that mother was "entitled to do that," but warned mother that, "by the time that lawyer gets involved other things are going to happen and that's the reality * * *." The court then informed mother that she had to "keep back in the audience[,]" and invited DHS to begin its *prima facie* case.

As the hearing continued, DHS clarified for the court that DHS was proceeding against both mother and father, stating that "one of the confusing things about this, your Honor, has been a problem[,] is the two cases, unfortunately, were not tracking each other for [G] and [N] * * *." A short while later, during DHS's examination of mother's caseworker, the following colloquy occurred:

"[DHS]:   Your honor, could you please request [mother] to quit laughing and making comments in court.

"THE COURT:   I heard the laugh. I didn't hear the comment.

"[MOTHER]:   (Inaudible) I'm sorry.

"THE COURT:   Here's your options. Your option is to be quiet like anybody else does in a courtroom or to leave.

"[MOTHER]:   (Inaudible) stand. I have nothing—

"THE COURT:   Ma'am. Ma'am. [Your] options are to be quiet or to leave.

"[MOTHER]:   (Inaudible).

"THE COURT:   Thank you.

"[MOTHER]:   (Inaudible).

"THE COURT:   Leave. Go. Go. Go ahead."

Following mother's departure from the courtroom, the attorney for the children cross-examined the lone witness, DHS

completed its presentation of evidence, and the hearing was adjourned.

On the court's "Journal Entry" for the day, under the heading "Appearances," the court listed the names of the assistant attorney general who argued the case on behalf of DHS, the DHS caseworker who testified, the attorney appearing on behalf of the children, and mother. Below that list, under the heading "Notes," the Journal Entry contained the annotation, "Mother is not a party." The court entered a judgment terminating mother's parental rights to both children the same day. The judgment stated that "[m]other failed to appear as previously ordered."

B. *Mother's attempt to appeal the judgment*

Mother timely filed a notice of appeal from that judgment in January 2013. Mother simultaneously moved for a summary determination of appealability in this court, arguing that her appearance at the December 18 *prima facie* hearing rendered the TPR judgment appealable, notwithstanding this court's prior holding in *State ex rel Juv. Dept. v. Jenkins*, 209 Or App 637, 645-46, 149 P3d 324 (2006), *rev den sub nom State ex rel Juv. Dept. v. D. C. J.*, 342 Or 416 (2007), that the father's failure to appear at a TPR hearing in that case constituted a waiver of appeal. DHS did not respond to the motion.

The Appellate Commissioner issued a summary determination of appealability and order in January 2013. It noted that mother "has raised the issue of whether the judgments terminating her parental rights * * * are not appealable because the trial court entered the judgments after appellant defaulted and failed to appear at [the] hearing" and ordered dismissal of mother's appeals. In February, mother filed a petition for review. In May, the Supreme Court denied mother's petition. Thereafter, this court issued the appellate judgment dismissing the appeals as to each child on June 25, 2013.

C. *Mother's motion to set aside the default judgment*

After mother had received notice of the appealability determination and before she filed her petition for review

in the Supreme Court, mother returned to the juvenile court and moved to set aside the default termination judgment. Mother argued that the juvenile court has "inherent authority" under ORS 419B.923(8) to set aside a void judgment and that, when a party moves to set it aside, the court "has no discretion to deny that motion." Mother further contended that "because the court did not have the authority to act in the first instance," the judgment "has no legal effect as a matter of law." As for ORS 419B.819(7), she argued that, although it gives a juvenile court authority "to terminate a parent's parental rights *in the parent's absence*," that statute does not confer authority to terminate a parent's parental rights at a hearing "in which the parent is present, the parent contests the termination of his or her rights, and the parent requests to participate." (Emphasis in original.) Mother requested that the court "vacate the judgment terminating her parental rights and allow her to defend against [DHS's] petition." Mother also argued that, if the juvenile court "determines that it is not within its inherent authority to set aside a void judgment," the court should nonetheless set aside the judgment pursuant to ORS 419B.923(1), arguing that "the court's lack of authority to terminate a parent's parental rights constitutes a (non-enumerated) reason to vacate the judgment." Mother emphasized that ORS 419B.923 must be construed and complied with in accordance with a parent's due process rights, citing to ORS 419B.090(4) and *Dept. of Human Services v. J. R. F.*, 351 Or 570, 273 P3d 87 (2012).

In addition to her statutory arguments, mother made constitutional arguments. She argued that the juvenile court's failure to vacate its TPR judgment violated her substantive due process rights to parent her child. She argued further that allowing the judgment to stand would violate her right to procedural due process by punishing her for nonappearance at a pretrial hearing by terminating her parental rights without her ability to present a defense to the petition, a result "not 'fundamentally fair' within any plausible meaning of the phrase."

DHS objected to mother's motion to set aside the default judgment. It initially summarily argued that mother's pleadings did not establish a legal basis under ORS

419B.923 for the court to set aside the judgment; her motion did not establish "a factual basis under which the court has discretion to set aside the judgment"; and her motion was untimely. DHS then supplemented its legal arguments, asserting that the default judgment was not void and instead was valid under ORS 419B.817 and did not violate mother's due process rights. According to DHS, under *State v. McDonnell*, 343 Or 557, 176 P3d 1236 (2007), *cert den*, 555 US 904 (2008), the TPR judgment was "voidable" but not "void"—and therefore subject only to a direct attack on appeal—because the juvenile court had both personal and subject matter jurisdiction. DHS also stated that it "agrees that mother is a party to this proceeding" and that ordinarily, as a party, she could call witnesses and participate in hearings. Nonetheless, DHS argued, "mother's failure to appear on two separate occasions * * * entitled the court to proceed without considering her testimony."

At the hearing on the motion, at which mother was present, mother reiterated her arguments and clarified that she was also arguing that "the court lack[ed] jurisdiction" to enter the TPR judgment, making it void. Mother also requested that the court amend the judgment, which she contended incorrectly stated that mother did not appear at the termination hearing. DHS relied on and primarily reiterated the arguments advanced in its written responses. The attorney for the children emphasized that, at the December 18 *prima facie* hearing, the court repeatedly offered—and mother repeatedly declined—the opportunity to have counsel appointed for her.

After the hearing, the court issued a letter opinion denying mother's motion. The court reasoned that, "[i]n each case, [m]other was personally served; failed to appear; and an order of default was entered in each case * * *. Because the Court believes the default orders were properly entered, the judgment in each case is authorized pursuant to ORS 419B.815(7)."[1] The court's final order denying the motion to

---

[1] In its order, the juvenile court cited ORS 419B.815(7), which pertains to the effect of service of a summons on a person to appear in a juvenile dependency proceeding to establish jurisdiction, but we conclude that the juvenile court intended to rely on ORS 419B.819(7). The parties on appeal correctly focus on that parallel statute for TPR proceedings.

set aside the default judgment contained the following findings and conclusions:

"1. Judgments terminating mother's parental rights were entered December 18, 2012.

"2. Mother was personally served in each case.

"3. An order of default was entered on July 30, 2012 in the 12JU130TPR [matter] and an order of default was entered on November 1, 2012 in the 12JU193TPR matter.

"4. The default orders were properly entered in each case pursuant to ORS 419B.815(7)."

## II. ANALYSIS

On mother's appeal of the order, both parties renew their arguments as to the scope of the juvenile court's authority and discretion to set aside the default judgment, with the focus of the dispute on two legal questions: First, did the juvenile court have statutory authority to set aside the default judgment? Second, did the juvenile court enter the default judgment based on a legal error, which in turn required it to set aside the judgment? We review the denial of a motion to set aside a judgment under ORS 419B.923 "for an abuse of discretion." *State ex rel Juv. Dept. v. D. J.*, 215 Or App 146, 155, 168 P3d 798 (2007). "If the court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the court did not abuse its discretion." *Id.* We review the underlying legal questions for legal error.

A. *A juvenile court's authority under ORS 419B.923 to set aside its judgment*

We first conclude that ORS 419B.923 afforded the juvenile court the discretion to set aside the default TPR judgment in this case. That statute reads, in relevant part:

"(1) Except as otherwise provided in this section, *on motion and such notice and hearing as the court may direct, the court may modify or set aside any order or judgment made by it. Reasons for modifying or setting aside an order or judgment include, but are not limited to*:

"(a) Clerical mistakes in judgments, orders or other parts of the record and errors in the order or judgment arising from oversight or omission. These mistakes and errors

may be corrected by the court at any time on its own motion or on the motion of a party and after notice as the court orders to all parties who have appeared. During the pendency of an appeal, an order or judgment may be corrected as provided in subsection (7) of this section.

"(b)   Excusable neglect.

"(c)   Newly discovered evidence that by due diligence could not have been discovered in time to present it at the hearing from which the order or judgment issued.

"* * * * *

"(7)   *A motion under subsection (1) of this section may be filed with and decided by the trial court during the time an appeal from a judgment is pending before an appellate court.* The moving party shall serve a copy of the motion on the appellate court. The moving party shall file a copy of the trial court's order or judgment in the appellate court within seven days of the date of the trial court order or judgment. Any necessary modification of the appeal required by the court order or judgment must be pursuant to rule of the appellate court.

"(8)   This section does not limit the inherent power of a court to modify an order or judgment within a reasonable time or the power of a court to set aside an order or judgment for fraud upon the court."

(Emphasis added.)

As noted above, mother first invokes ORS 419B.923(8) as providing inherent authority for the juvenile court to set aside the TPR judgment. DHS counters that, even assuming that the juvenile court had such authority, it could not exercise it while the judgment was being appealed. We agree.

As we have previously concluded, "ORS 419B.923(7) provides that a trial court may decide a motion under ORS 419B.923(*1*) during the pendency of an appeal, but creates no such exception for a modification of a judgment under ORS 419B.923(*8*). Nor does ORS 419B.923(8) itself create such an exception." *State v. N. L.*, 237 Or App 133, 140-41, 239 P3d 255 (2010) (emphasis added). Here, mother filed her notice of appeal from the TPR judgment on January 22, 2013, and that appeal did not resolve until June 25, 2013, when the appellate judgment issued. Thus, mother's litigation in the

juvenile court of her motion to set aside the TPR judgment, which she filed on January 28 and which the court denied in April, occurred entirely during the pendency of her initial appeal of that judgment. Under this court's precedent, therefore, the juvenile court lacked authority to set aside the TPR judgment under ORS 419B.923(8). *N. L.*, 237 Or App at 140.[2]

We agree, however, with mother's alternative argument that ORS 419B.923(1) gave the juvenile court the authority to set aside the TPR judgment. Under *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), we begin our statutory analysis with the text of ORS 419B.923(1), which plainly states that "the court may * * * set aside any order or judgment made by it."

DHS offers no argument that subsection (1), by its terms, establishes any specific limit on that discretion, and our reading of the text reveals none. Although the legislature specified three reasons for setting aside a judgment— clerical mistakes, excusable neglect, and newly discovered evidence—that list is not exclusive. The plain language of ORS 419B.923(1) provides that "[r]easons for modifying or setting aside an order or judgment *include, but are not limited to*[,]" the three examples that the statute lists. (Emphasis added.) Because of the legislature's use of that emphasized phrase, we conclude that the examples in ORS 419B.923(1) do not circumscribe the broad discretion that the subsection otherwise bestows on a juvenile court. *See State v. Kurtz*, 350 Or 65, 75, 249 P3d 1271 (2011) (holding that, although courts may interpret a general term as *confined* by an attendant list of examples, "[t]he legislature * * * can alter the calculus by signaling that it *does not intend to confine* the scope of a general term in a statute according to the characteristics of listed examples" by employing "statutory terms such as * * * '*including but not limited to*,'" which "convey[s] an intent that an accompanying list of examples be read in a nonexclusive sense" (emphasis added)).

---

[2] Because we resolve the issue of the applicability of ORS 419B.923(8) on that basis, we do not reach DHS's additional argument that the plain language of subsection (8) limits a juvenile court's inherent power to *set aside* an order or judgment—as opposed to its inherent power to *modify* an order or judgment—to instances of "fraud upon the court."

Our review of the legislative history of the statute supports that reading. The legislature enacted ORS 419B.923 in 2001 as part of the effort to overhaul the procedural rules applicable to juvenile dependency and TPR cases. In testimony on House Bill (HB) 2611 (2001) before the House Judiciary Subcommittee, an assistant attorney general and member of the Oregon Law Commission's Juvenile Code Revision Work Group, the bill's proponent, explained that the bill accomplished three things: (1) It continued an effort begun in 1993 "to organize and clarify the juvenile code by re-codifying and bringing together all of the procedural statutes in ORS chapter 419B," (2) it clarified that the Oregon Rules of Civil Procedure do not apply in dependency and TPR cases, and (3) it incorporated "certain provisions from the ORCP, where appropriate and necessary to carry out the purposes of the juvenile court." Testimony, House Judiciary Committee, Subcommittee on Criminal Law, HB 2611, Feb 15, 2001, Ex E (statement of Michael Livingston). Another member of the work group provided the legislature with the Oregon Law Commission's "Oregon Rules of Juvenile Court Procedure: A Report," which the commission had adopted on November 17, 2000. Testimony, Senate Judiciary Committee, HB 2611, Apr 30, 2001, Ex H (in connection with statement of Kathie Osborn). That report emphasized the need for a single set of rules of juvenile court procedure that would be applicable in dependency and TPR cases. *Id.* at 2.

Section 33 of HB 2611, which was eventually codified as ORS 419B.923, addressed procedures for relief from judgments and orders. The Oregon Law Commission presented the legislature with a "Section by Section Analysis: House Bill 2611-1" (adopted by Oregon Law Commission on Apr 24, 2001) (hereinafter Section by Section Analysis). Testimony, Senate Judiciary Committee, HB 2611, Apr 30, 2001, Ex I (in connection with statement of Kathie Osborn). The commission's analysis of section 33 was as follows:

"Section 33: This section substantially reworks the provisions of ORS 419B.420 and ORCP 71 to specify procedures for relief from judgments and orders.

"Subsection (1) allows a motion to set aside an order for reasons including but not limited to clerical error, excusable neglect and newly discovered evidence.

"Subsection (2) requires the movant to state with particularity the facts and legal basis for the motion.

"Subsection (3) requires the motion to be made within a reasonable time.

"Subsection (4) incorporates current ORS 419B.423(1) governing notice and hearing on modifications with no substantive change.

"Subsection (5) is current ORS 419B.423(2)(b) requiring Indian Child Welfare Act (ICWA) notice.

"Subsection (6) is ORS 419B.423(2)(a) exempting notice and hearing requirements when effect of modification is transfer of child from one foster home to another. ICWA notice provision is added to this subsection.

"Subsection (7) is new and governs motions to set aside when an appeal is pending.

"Subsection (8) is adopted from ORCP 71C and allows the court to exercise [its] inherent power to modify or set aside for fraud on the court."

Section by Section Analysis at 11. Thus, the Oregon Law Commission viewed what became ORS 419B.923 as a substantial reworking of both *former* ORS 419B.420 (1993), *repealed by* Or Laws 2001, ch 622, § 57, and ORCP 71.

As relevant to ORS 419B.923(1), ORCP 71 A (1999) provided for correction of clerical mistakes, and ORCP 71 B (1999) provided the following list of certain other grounds for relief from a judgment, "upon such terms as are just":

"(a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 64 F; (c) fraud, misrepresentation, or other misconduct of an adverse party; (d) the judgment is void; or (e) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application."

The most significant difference between ORCP 71 and ORS 419B.923(1) is the closed universe of potential grounds for relief from a judgment listed in ORCP 71 A and B. In contrast, ORS 419B.923(1) does not so limit the grounds for relief and instead provides broad discretion to a juvenile court. The text of ORS 419B.923(1) came from *former* ORS 419B.420, which read:

> "Except as provided in ORS 419B.423 [omitting notice requirements in certain circumstances, including some cases of terminations of parental rights] and 419B.426 [restricting authority to modify or set aside during adoption proceedings or after an adoption was granted], *the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct.*"

(Emphasis added.)

Thus, through section 33 of HB 2611, the Oregon Law Commission's Juvenile Code Revision Work Group urged adoption of a statute on court authority to modify or set aside orders and judgments that both tracked the broad language that was already in *former* ORS 419B.420 and rejected the limitation imposed by ORCP 71 A and B on available grounds for relief. Testimony by Michael Livingston confirms that analysis. At a public hearing before the Senate Judiciary Committee, Livingston testified that section 33 *"expands* the grounds" upon which a parent may move to set aside a juvenile court's order *"beyond* those authorized by ORCP 71, which are limited." Tape Recording, Senate Judiciary Committee, HB 2611, Apr 30, 2001, Tape 115, Side B (statement of Michael Livingston) (emphasis added). We conclude that, with the passage of HB 2611, the legislature intended to provide a juvenile court with broad authority under ORS 419B.923(1) to modify or set aside a judgment or order.

We are not called on to decide a case at the outer boundaries of that broad authority. We note that, in this TPR case, mother raises a serious question regarding the juvenile court's authority to enter the default judgment she seeks to set aside and a colorable claim of a violation of her due process rights by virtue of the juvenile court's interpretation of its authority to enter judgment without allowing

her the opportunity to defend against the allegations in the TPR petition at the hearing she attended. Those are sufficient grounds for a juvenile court to consider exercising its authority under ORS 419B.923(1) to set aside a judgment and, in certain circumstances, may require such exercise of authority. *See State ex rel Juv. Dept. v. Burris,* 163 Or App 489, 494-96, 988 P2d 414 (1999) (reversing a dependency jurisdictional judgment entered against a parent when the parent lacked notice that the failure to attend a status conference would result in a *prima facie* hearing in her absence; the juvenile court plainly erred given the lack of statutorily required notice and due process and given the gravity of the error affecting parental rights); *State ex rel Juv. Dept. v. Mertes,* 162 Or App 530, 533, 986 P2d 682 (1999) (reversing a judgment terminating a parent's rights and agreeing with the state's concession that the juvenile court had statutory authority to proceed by default only "at the time and place" that the parent failed to appear and so was not authorized to terminate parental rights at a hearing when the parent was present but was denied the opportunity to participate due to a failure to appear at an earlier proceeding).

B.  *The denial of mother's motion to set aside the default judgment*

Having determined that the juvenile court possessed the authority under ORS 419B.923(1) to set aside the TPR judgment, we next consider whether the court abused its discretion when it denied mother's motion for relief from the judgment. As noted earlier, the juvenile court considered the default orders to have been properly entered in each child's case and then treated mother as a nonparty at the termination proceeding leading to the default judgment at issue. The parties fundamentally disagree as to whether ORS 419B.819(7), which governs the effect of a parent's failure to appear for any hearing relating to a TPR petition, permitted the juvenile court to enter a default TPR judgment against mother. Under the circumstances that occurred here, we agree with mother that the answer to that question is that it did not. We also conclude, based on that legal error in the entry of the default judgment, that the juvenile court abused its discretion when it denied mother's motion to set aside the default judgment.

In its entirety, ORS 419B.819(7) provides:

*"If a parent fails to appear for any hearing related to the petition,* or fails to file a written answer, as directed by summons or court order under this section or ORS 419B.820, *the court, without further notice and in the parent's absence, may*:

"(a)  *Terminate the parent's rights* or, if the petition seeks to establish a permanent guardianship, grant the guardianship petition *either on the date specified in the summons or order or on a future date*; and

"(b)  Take any other action that is authorized by law."

(Emphasis added.) The juvenile court applied ORS 419B.819(7) to bar mother from participating in the *prima facie* hearing that resulted in the default TPR judgment against her, even though she was present and attempted to participate in that hearing.

The parties present an issue of statutory construction that is one of first impression. We therefore employ the statutory methodology prescribed in *Gaines*, analyzing the text in context, which includes prior judicial construction, and relevant legislative history. 346 Or at 171-72. In dependency cases, "relevant context includes ORS 419B.090(4), which makes clear that the due process rights of parents are always implicated in the construction and application of the provisions of ORS chapter 419B." *J. R. F.*, 351 Or at 579.

In support of the judgment, DHS focuses on the phrase, "on a future date" in ORS 419B.819(7), arguing that we should construe that phrase as granting the court the authority to terminate parental rights by default at any time after the parent has failed to attend any pretrial hearing, even if the parent appears for a trial. Under the construction that DHS urges, "the statute allows the juvenile court to terminate a parent's rights without further notice and without the parent's participation once that parent fails to appear, regardless of when the hearing occurs and whether the parent appears at a later date." We reject that argument. As an initial matter, the "on a future date" wording can be understood not to modify the court's termination of a parent's rights at all; rather, the sole referent for the phrase "either on the date specified in the summons or order

or on a future date" appears to be the granting of a guardianship petition. *See State v. Webb*, 324 Or 380, 386, 927 P2d 79 (1996) (explaining the last antecedent doctrine).

Moreover, we agree with mother that DHS's reading ignores the import of the phrase, "and in the parent's absence." Under DHS's proffered construction of the statute, that phrase means "without the parent's participation." In common usage, though, "without someone's participation" is not the equivalent of "in someone's absence."

"Participation" connotes engagement in an activity with others. *See Webster's Third New Int'l Dictionary* 1646 (unabridged ed 2002) ("participation" means "the action or state of participating" or "the action or state of taking part with others in an activity"). Similarly, "participating" means "involving participation by more than one person or agency" and to "participate" means "to take part in something (as an enterprise or activity) [usually] in common with others" or "to have a part or share in something." *Id.*

However, being absent is different from not participating. The noun "absence" is defined as the "state of being absent or missing from a place" and "failure to be present (as in an accustomed place) or where one is needed, wanted, or normally expected." *Webster's* at 6 (listing "nonattendance" and "nonappearance" as synonyms). "Absent," in turn, means "not present or not attending." *Id.*

DHS's interpretation allows a juvenile court to terminate a parent's rights even when "the parent appears." Thus, DHS reads the statute's authorization to terminate a parent's rights in that parent's *absence* as authorization to terminate even in a parent's *presence*. DHS's interpretation of ORS 419B.819(7) is irreconcilable with the ordinary meaning of "in the parent's absence."

Furthermore, given the first clause of ORS 419B.819(7)—"[i]f a parent fails to appear for any hearing related to the petition"—the construction that DHS urges would have the effect of rendering the phrase "in the parent's absence" meaningless surplusage. Without the latter phrase, the initial clause would suffice by itself to grant such authority. "As a general rule, we construe a statute in

a manner that gives effect, if possible, to all its provisions." *Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013) (citing ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.")).

We also reject DHS's argument that the phrase "on a future date" negates the above analysis and affords juvenile courts the discretion, perpetually, to terminate parental rights without regard to a parent's presence at trial and request to be heard in opposition. First, we reiterate our reasoning that such an interpretation cannot be reconciled with the plain meaning of "in the parent's absence." Second, we conclude that the history of ORS 419B.819(7) and its two precursors, *former* ORS 419B.515 (1993), *repealed by* Or Laws 2001, ch 622, § 57, and *former* ORS 419B.917 (2001), *repealed by* Or Laws 2003, ch 205, § 12, demonstrates that the phrase "on a future date" pertains more narrowly to the notice requirements for termination (and guardianship) proceedings.

The legislature enacted *former* ORS 419B.515 in 1993. *Former* ORS 419B.515 set out the requirements for a summons in TPR cases and read, in relevant part:

> "An order pursuant to ORS 419B.500, 419B.502, 419B.504, 419B.506 and 419B.508 may be made only after service of summons, as provided in ORS 419B.274, 419B.277 and 419B.280, on the parent or parents. *The summons shall contain a statement to the effect that the rights of the parent or parents are proposed to be terminated in the proceeding and that if the parent or parents fail to appear at the time and place specified in the summons, the court may terminate parental rights* and take any other action that is authorized by law."

(Emphasis added.) Although the statute on its face only provided requirements for the *contents* of certain summons, the italicized portion of *former* ORS 419B.515 was interpreted as "the" source of juvenile courts' *substantive* authority to terminate parental rights following a parent's default. *See, e.g., Mertes*, 162 Or App at 532-33 (so stating). In *Mertes*, we concluded that *former* ORS 419B.515 "gives a juvenile court authority to proceed *at the time and place* that the parent fails to appear." 162 Or App at 533 (emphasis in original).

In 2001, the legislature repealed *former* ORS 419B.515 and replaced it with *former* ORS 419B.917, which read, in relevant part:

"(1) If a child is before the court and a person who is required to be summoned has been summoned and has failed to appear for any dates, including but not limited to trial dates for which the person has been summoned, and the petitioner is ready to proceed, *the court may proceed with the case in the person's absence.*"

(Emphasis added.) *Former* ORS 419B.917 originated as section 31 of the same bill, HB 2611, cited above in our discussion of ORS 419B.923.

The legislative history of HB 2611 reveals why *former* ORS 419B.917 was introduced to replace *former* ORS 419B.515: to expressly establish a juvenile court's authority to proceed with a dependency proceeding in the parent's absence—which had previously only been implied in *former* ORS 419B.515—and to provide procedural guidance to courts exercising that authority. As Kathie Osborne testified at the same April 30, 2001, Senate Judiciary Committee proceeding previously referenced, it was unclear what procedure juvenile courts could and should follow in TPR proceedings where a parent failed to appear, "since there was no actual procedure for holding the parents in default" under *former* ORS 419B.515. Audio Recording, Senate Committee on Judiciary, HB 2611, Apr 30, 2001, (2 of 2), at 39:50 (statement of Kathie Osborne) http://www.leg.state.or.us/listn/archive/archive.2001s/SJUD-200104301250.ram (accessed Dec 4, 2013); *see also* Section by Section Analysis at 10 (describing section 31 as a "new provision" specifying "the court's authority to proceed in a summoned party's absence, when that party has failed to appear" and "provid[ing] a procedure for the court to proceed when summoned parties fail to appear").

What *former* ORS 419B.917 did not change, however, was the fact that, just as with *former* ORS 419B.515, the authority it granted to terminate parental rights in a parent's absence was limited to proceedings *at which* the parent did not appear. *See* Tape Recording, Senate Judiciary Committee, HB 2611, Apr 30, 2001, Tape 115, Side B

(statement of Kathie Osborn) ("Section 31 ma[de] it clear that the court has authority to proceed in the summon[ed] party['s] absence when the person fails to appear."); *see also Id.* (statement of Michael Livingston) ("[E]very summons * * * has to advise the parent that if the parent fails to appear personally, the court will proceed in the parent's absence * * * at that time.").

However, the drafters of *former* ORS 419B.917 unwittingly introduced a problem in TPR proceedings, namely, that a parent in a TPR case would have to be served with a summons for every proceeding held during the case. Thus, in 2003, the legislature enacted HB 2272, "repealing [*former*] ORS 419B.917 and authorizing, in its place, the summons practices that were in effect in the different counties of the state before the enactment of [*former*] ORS 419B.917." Testimony, Senate Judiciary Committee, HB 2272, Apr 22, 2003, Ex H (statement of Michael Livingston).

The Oregon Law Commission, the proponent of HB 2272, submitted to the legislature a majority report on HB 2272 that described the practice before *former* ORS 419B.917 was enacted as follows:

> "*Former* ORS 419B.515, which governed summons requirements in termination-of-parental rights cases before its repeal by Oregon Laws 2001, chapter 622, provided that the juvenile court could terminate parental rights, 'only after service of summons,' which contained
>
>> "'a statement to the effect that the rights of the parent or parents are proposed to be terminated in the proceeding and that if the parent or parents fail to appear at the time and place specified in the summons, the court may terminate parental rights and take any other action that is authorized by law.'
>
> "(Emphasis added). Until its repeal, *former* ORS 419B.515 was construed and applied by juvenile courts throughout the state to require that summons be served (along with a copy of the termination petition) only once—*i.e.*, when the proceeding was initiated."

Testimony, House Judiciary Committee, HB 2272, Mar 6, 2003, Ex I at 2 n 2 (emphasis in original) ("Juvenile Code Revision: Summons (Majority Report) HB 2272") (approved

by the Oregon Law Commission on Feb 6, 2003) (herein-
after Summons Majority Report). That majority report also
described the various sections of HB 2272 and, as to section
3, which eventually was codified as ORS 419B.819, and as to
section 5, eventually codified as ORS 419B.820, stated that
the summonses and court orders in TPR cases that those
sections governed "must inform the parent that, if the par-
ent fails to appear as directed for any hearing related to
the petitions, *the court may grant the petition in the parent's
absence* without further notice." Summons Majority Report
at 4 (emphasis added). In sum, although the phrase "if the
parent or parents fail to appear at the time and place spec-
ified" from *former* ORS 419B.515 was not maintained in
HB 2272 and instead the phrase "in the parent's absence"
was used, *see* Or Laws 2003, ch 205, §§ 3(4), (7), codified as
ORS 419B.819(4) and (7), our examination of the text and
legislative history of ORS 419B.819(7) and its predecessors
demonstrates that those statutory provisions have only ever
empowered courts to terminate parental rights by default
*as a result of a parent's failure to appear* at proceedings at
which the parent is actually absent.

Finally, we note that, were we to accept DHS's posi-
tion concerning ORS 419B.819(7), mother in this case would
have no opportunity to challenge the termination of her
parental rights despite her presence at the final hearing,
which is untenable given the Supreme Court's admonition
in *J. R. F.*, 351 Or at 579, to be mindful of the due process
concerns at play in juvenile dependency proceedings. "The
permanent termination of parental rights is one of the most
drastic actions the state can take * * *." *State ex rel Juv.
Dept. v. Geist*, 310 Or 176, 186, 796 P2d 1193 (1990). Due
process demands a termination that is fundamentally fair,
and the essence of fundamental fairness is the opportunity
to be heard at a meaningful time and in a meaningful man-
ner. *Id.* at 189-90.

Here, mother was physically present at the termina-
tion fact-finding hearing[3] and attempted to participate and

---

[3] Mother also attended several previous hearings, even though, as both the
juvenile court and DHS acknowledged, the series of court appearances and hear-
ings that mother was required to attend was "confusing" because the state had

contest the termination of her parental rights. The juvenile court nevertheless ruled that ORS 419B.819(7) authorized it to enter a default judgment against mother at the December 18 TPR hearing that she attended, because she had earlier failed to appear. Because we hold that ORS 419B.819(7) only authorizes a juvenile court to enter a TPR default judgment against a parent at a proceeding at which that parent is absent, we conclude that the juvenile court committed legal error when it terminated mother's rights on the basis that the court articulated. That same legal error was the basis for the juvenile court's decision to deny mother's motion to set aside the default judgment; accordingly, the court's ruling was not within a range of legally correct choices and constitutes an abuse of discretion. *D. J.*, 215 Or App at 155.

DHS argues that such error was harmless because, notwithstanding the juvenile court's refusal to let her participate, mother was not prepared to proceed. Even assuming that harmless error can be a consideration when the juvenile court lacked authority to enter the default judgment, we disagree with the state's factual premise. The state is correct that mother indicated at the December 18 TPR hearing that she was still attempting to retain private counsel and still wished to decline court-appointed counsel. But it does not follow that she was necessarily unprepared to proceed, for example, *pro se.* Although the juvenile court acknowledged at that hearing that mother was there and "representing [her]self," the court did not allow mother to proceed *pro se* but, rather, informed her that she was "not entitled to be heard" and directed her to "keep back in the audience."

In conclusion, the juvenile court incorrectly applied ORS 419B.819(7) and thus abused its discretion under ORS 419B.923(1) to set aside the erroneously entered default judgment.[4] Therefore, we reverse the order and remand to

---

failed to consolidate the cases at an earlier point in the proceedings as it should have.

[4] Because we resolve mother's appeal on statutory grounds, we do not reach her constitutional arguments. *Nelson v. Lane County*, 304 Or 97, 102 n 2, 743 P2d 692 (1987) ("We often have stressed the need to examine statutory authority and the limitations imposed by that authority before reaching any constitutional question."); *Mertes*, 162 Or App at 533 n 3 (the "court must first consider whether action is statutorily authorized before reaching constitutional claim").

the juvenile court to vacate the default judgment and for further proceedings.

Reversed and remanded.