Argued and submitted April 30, affirmed September 16, 2015

In the Matter of S. J. L.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. W.,
*Appellant.*

Lane County Circuit Court
11216J;
Petition Number 11216J03;
A158199

359 P3d 539

Caitlin Mitchell argued the cause and filed the briefs for appellant.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were

Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

The issue in this juvenile dependency appeal is whether the juvenile court has authority under ORS 419B.923(1) to set aside a judgment terminating parental rights because, at the time of the motion to set aside, adoption was no longer in the best interests of the child. Ultimately, we conclude that the legislature did not intend for ORS 419B.923(1) to grant the juvenile court the discretion to set aside an order or judgment in circumstances such as those alleged by mother in this case. Accordingly, while mother's concerns may well deserve legislative attention, we must affirm the ruling of the juvenile court.

The relevant facts are mostly procedural. The juvenile court took jurisdiction over S in July 2011, when S was five years old. The court terminated mother's parental rights in December 2012, after a three-day trial. Mother appealed the termination of parental rights (TPR) judgment, and we affirmed without opinion. *Department of Human Services v. J. A. L.*, 258 Or App 682, 311 P3d 1252 (2013), *rev den*, 354 Or 699 (2014).

Two months after the appellate judgment was entered and 16 months after the court entered the TPR judgment, mother moved to set aside the TPR judgment under ORS 419B.923(1), asserting that it would "cause harm" to S. Mother supported her motion with affidavits from S's maternal great-grandparents, who had served as S's foster parents since her removal from mother's care in 2011 and had been identified as S's designated adoptive placement by the Department of Human Services (DHS). The affidavits described a bond between mother and S that had been strengthened by participation in the Family Preservation Project at Coffee Creek Correctional Facility, where mother was incarcerated. In the great-grandparents' view, adoption was no longer in S's best interests. Mother also submitted declarations from others that purported to document the progress that she had made since the TPR judgment. Mother did not raise any concerns about the form of the TPR judgment or the fairness of the TPR proceedings that resulted in the TPR judgment.

DHS objected to mother's motion, contending, among other things, that she did not state a proper basis for relief under ORS 419B.923(1). DHS argued that the statute does not provide authority for a juvenile court to set aside a TPR judgment that was "fully litigated" by the parties when the parent has not raised any due process or fairness concerns with the underlying proceedings. In DHS's view, such authority would jeopardize the finality of TPR judgments and delay permanency for children across the state. Alternatively, DHS maintained that, even if the statute gave the court authority to consider mother's motion, mother had failed to file her motion within a reasonable time, as required by ORS 419B.923(3).

The court denied mother's motion on purely legal grounds, concluding that ORS 419B.923(1) does not authorize the court to set aside a TPR judgment because of "changed circumstances" and, alternatively, that mother had failed to bring the motion within a reasonable time. The court concluded that ORS 419B.923(1) allows for a judgment to be set aside only in instances involving faulty procedure or notice related to the TPR proceeding, or at least some type of due process issue—not a mere change of circumstances since the time the court entered the TPR judgment. Accordingly, the court did not address the merits of mother's allegations.

Mother appeals, assigning error to the court's denial of her motion. We review the denial of a motion to set aside a judgment under ORS 419B.923 for an abuse of discretion. *State ex rel Juv. Dept. v. D. J.*, 215 Or App 146, 155, 168 P3d 798 (2007). However, we review any underlying legal questions for legal error. *Pearson v. Philip Morris, Inc.*, 257 Or App 106, 168, 306 P3d 665 (2013), *rev allowed*, 354 Or 699 (2014). And in this case, the juvenile court's ruling raises only legal questions.

This case requires us to interpret ORS 419B.923, which provides, in part:

"(1)   Except as otherwise provided in this section, on motion and such notice and hearing as the court may direct, the court may modify or set aside any order or judgment

made by it. Reasons for modifying or setting aside an order or judgment include, but are not limited to:

"(a)  Clerical mistakes in judgments, orders or other parts of the record and errors in the order or judgment arising from oversight or omissions. * * *

"(b)  Excusable neglect.

"(c)  Newly discovered evidence that by due diligence could not have been discovered in time to present it at the hearing from which the order or judgment issued.

"* * * * *

"(3)  A motion to modify or set aside an order or judgment must be made within a reasonable time except no order or judgment [providing for disposition of a ward after entry of a TPR judgment] may be set aside or modified during the pendency of a proceeding for the adoption of the ward, nor after a petition for adoption has been granted."

We recently addressed the scope of the juvenile court's authority to modify or set aside a judgment under ORS 419B.923(1), ultimately concluding that the statute granted the juvenile court the discretion to set aside a default TPR judgment that the court had improperly entered. *Dept. of Human Services v. A. D. G.*, 260 Or App 525, 317 P3d 950 (2014). In that case, the mother had failed to appear at a pretrial hearing, so the court entered an order of default against her. When she later appeared at a *prima facie* TPR hearing, the court precluded her from participating and entered a TPR judgment at the end of the hearing, noting that "mother failed to appear." *Id.* at 531. The mother's attempt to appeal that TPR judgment was then precluded by *State ex rel Juv. Dept. v. Jenkins*, 209 Or App 637, 645-46, 149 P3d 324 (2006), *rev den sub nom State ex rel Juv. Dept. v. D. C. J.*, 342 Or 416 (2007) (failure to appear at a *prima facie* TPR hearing precludes appeal of the resulting default TPR judgment). She subsequently moved to set aside the default TPR judgment under ORS 419B.923(1); the juvenile court denied her motion.

On appeal, the parties disputed the scope of the juvenile court's authority to set aside the default TPR judgment under ORS 419B.923(1). *A. D. G.*, 260 Or App at 534.

To resolve that issue, we analyzed ORS 419B.923(1) according to our accepted principles of statutory interpretation. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (to determine legislative intent we examine the text of the statute in context, and in light of any legislative history). We noted that, by its terms, subsection (1) did not establish any specific limit on the court's authority to set aside an order or judgment. *A. D. G.*, 260 Or App at 536. Further, we explained that, although the statute lists three specific reasons for setting aside a judgment—clerical mistakes, excusable neglect, and newly discovered evidence—that list was not exclusive, and the legislature's use of "include, but are not limited to," indicated that those examples "do not circumscribe the broad discretion that the subsection otherwise bestows on a juvenile court." *Id.*

Next, we examined the legislative history of ORS 419B.923(1)—in particular, changes made by House Bill (HB) 2611 (2001) to the juvenile code "as part of the effort to overhaul the procedural rules applicable to juvenile dependency and TPR cases." *Id.* at 537. One particular purpose of those changes was to clarify that the Oregon Rules of Civil Procedure did not apply in dependency and TPR cases. *Id.* The legislative history revealed that the legislature had intended to retain the broad discretion to set aside orders or judgments in juvenile dependency cases that had existed in the predecessor statute to ORS 419B.923(1)—*former* ORS 419B.420 (1999), *repealed by* Or Laws 2001, ch 622, § 57[1]— and to reject the idea that the bases for setting aside or modifying an order or judgment were limited *exclusively* to the reasons provided in ORCP 71 A (providing for correction of clerical mistakes) or ORCP 71 B (providing for relief based on mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, misrepresentation, or misconduct of an adverse party). 260 Or App at 537-39 (citing legislative testimony by a workgroup member that the statute

---

[1] *Former* ORS 419B.420 (1999) provided:

"Except as provided in ORS 419B.423 [omitting notice requirements in certain circumstances, including some cases of terminations of parental rights] and 419B.426 [restricting authority to modify or set aside during adoption proceedings or after an adoption was granted], the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct."

"*expands* the grounds" upon which a parent may move to set aside a juvenile court's order "*beyond* those authorized by ORCP 71, which are limited") (emphasis in original). Accordingly, we concluded that the legislative history supported our understanding that the legislature intended to bestow broad authority on the juvenile court under ORS 419B.923(1). *Id.* at 539.

After noting that "[w]e are not called on to decide a case at the outer boundaries of that broad authority," we turned to the facts of *A. D. G.*, concluding that

> "in this TPR case, mother raises a serious question regarding the juvenile court's authority to enter the default judgment she seeks to set aside and a colorable claim of a violation of her due process rights by virtue of the juvenile court's interpretation of its authority to enter judgment without allowing her the opportunity to defend against the allegations in the TPR petition at the hearing she attended. Those are sufficient grounds for a juvenile court to consider exercising its authority under ORS 419B.923(1) to set aside a judgment[.]"

*Id.* at 539-40.

Shortly after *A. D. G.*, in *Dept. of Human Services v. T. L.*, 269 Or App 454, 461, 344 P3d 1123, *rev allowed*, 357 Or 324 (2015), we examined whether the scope of the juvenile court's authority under ORS 419B.923(1) extended to evaluating claims of inadequate assistance of trial counsel at TPR proceedings. Relying, in part, on *A. D. G.*, we concluded that ORS 419B.923(1) provided a "trial-level mechanism to set aside judgments in dependency cases." *Id.* at 456. We noted that a claim of inadequate assistance of trial counsel—a claim "also" based on due process concerns—would similarly fall within the court's broad discretionary authority to address under ORS 419B.923(1). *Id.* at 464.

Here, DHS recognizes that the juvenile court has broad authority under ORS 419B.923(1) to modify or set aside an order or judgment. Nevertheless, DHS argues that the legislature did not intend to provide the juvenile court with unlimited authority to act under the statute and that, in fact, the text of the statute demonstrates that the legislature intended to limit the court's authority under ORS

419B.923(1) to situations where the order or judgment is defective in form or the result of an unfair proceeding.

DHS's argument relies heavily on the principle of *ejusdem generis*, which "serves to confine the interpretation of [a] general term according to one or more common characteristics of the listed examples." *State v. Kurtz*, 350 Or 65, 74, 249 P3d 1271 (2011); *see also Lewis v. CIGNA Ins. Co.*, 339 Or 342, 350-51, 121 P3d 1128 (2005) (under *ejusdem generis*, courts examine "basic characteristics" of enumerated items when construing more general words). Under that principle, DHS contends that the authority granted to the juvenile court under ORS 419B.923(1) is limited to circumstances that are similar in nature to the three reasons listed in the statute for granting relief—*i.e.*, clerical mistakes, excusable neglect, and newly discovered evidence.

DHS acknowledges that we held in *A. D. G.* that the legislature's use of "include, but are not limited to" demonstrated that the legislature did not intend to limit the juvenile court's discretion to only the three enumerated reasons. Nevertheless, DHS asserts that the juvenile court's discretion must have some limitation and that applying *ejusdem generis* is the best way to understand the limits intended by the legislature. DHS urges that the common characteristic in ORS 419B.923(1) is a "defect in either the judgment itself, or in the process that resulted in the judgment that rendered the judgment unfair or improper." Given that understanding of the statute, DHS asserts that the statutory authority does not extend to mother's allegations because the allegations do not raise any due process or fairness issues with the TPR proceeding or judgment. Instead, mother simply argues that the court should set aside the TPR judgment because circumstances have changed.

As for the legislature's 2001 changes to the juvenile code, including the enactment of ORS 419B.923(1), DHS contends that that history actually demonstrates that the legislature intended to rein in the broad authority that existed in *former* ORS 419B.420 and to place some parameters around the court's discretion. That is, DHS argues that, rather than adopt the text of *former* ORS 419B.420 wholesale, the legislature integrated that statute with parts of ORCP 71 A and B

to craft a statute that was broader than, but still similar to, ORCP 71 A and B.

Mother counters DHS's reliance on *ejusdem generis* by asserting that the best indicator of legislative intent in ORS 419B.923(1) is the plain text of the statute, considered in the context of the juvenile dependency code as a whole. She maintains that when ORS 419B.923(1) is considered in light of the juvenile code's primary purpose—to allow the juvenile court the discretion to respond to the changing needs and best interests of children in its care—the statute must be understood to allow for a court to set aside a TPR judgment in the exceptional circumstances presented by mother's motion. As for *ejusdem generis*, she suggests that "the enumerated reasons for setting aside an order or judgment should be read as illustrative of the court's discretion, rather than as a limitation on its scope." She cautions that the "utility" of *ejusdem generis* in this context is questionable because, unlike the other cases in which Oregon courts have applied the principle, ORS 419B.923(1) does not provide a "general term that this court must define, other than the terms 'any' or 'reasons.'" In mother's view, "[t]he most logical understanding of the statute is that the examples were meant to illustrate three situations to which the statute might be applied, not to define the scope of the court's discretion to set aside, where no such limitation has been imposed through the use of a general term."

The application of *ejusdem generis* has been the subject of relatively recent discussion in the Oregon Supreme Court. *See Schmidt v. Mt. Angel Abbey*, 347 Or 389, 223 P3d 399 (2009). Because application of that principle in this instance affects our interpretation of ORS 419B.923(1), we begin by examining the court's guidance on the principle.

In *Schmidt*, the court was asked to interpret the intended meaning of "sexual exploitation" in ORS 12.117(2)(d). 347 Or at 400. The statute, which set forth the statute of limitations for an action based on "child abuse," provided that "child abuse" includes, among other things, "[s]exual exploitation of a child, including but not limited to: [three specific examples of conduct]." The question before the

Supreme Court was the correct interpretation of "sexual exploitation."

The court began by acknowledging that the "appropriate starting point" is the ordinary meaning of "sexual exploitation." *Id*. at 402. The court, however, explained that to arrive at the appropriate interpretation, the court must consider the dictionary definition of the terms and the context in which those terms are used. The court noted that "[w]hen, as here, the legislature uses a general term in a statute and also provides specific examples, those specific examples provide useful context for interpreting the general term." *Id*. In doing so, the court rejected the plaintiff's argument that the court was free to ignore the examples used by the legislature. Next, the court rejected the plaintiff's argument that reliance on *ejusdem generis* was incorrect because the legislature "chose to connect the general term 'sexual exploitation' with the specific examples by using the phrase 'including but not limited to.'" *Id*. at 404. The court acknowledged that it is not always constrained by the principle of *ejusdem generis* when the legislature precedes specific examples with the phrase "including but not limited to," but explained that it will apply the principle when "it provides useful guidance in interpreting a statutory term." *Id*. Further, the court noted:

> "That does not mean, of course, that the specific examples constitute the universe of items to which the general term refers; rather, it means only that our interpretation of the general term includes consideration of those specific examples."

*Id*.

The court proceeded to apply *ejusdem generis* to ORS 12.117(2)(d), noting that, when applying the principle, the court "examine[s] the 'basic characteristics' of the enumerated items" and, in doing so, "seeks to find, if it can, a *common* characteristic among the listed examples." *Id*. at 405 (emphasis in original; internal quotation marks omitted). The court ultimately concluded that the common characteristic in the legislature's provided examples was that, "in each situation, an adult causes—or attempts to cause—a child to be personally involved in a sexual act." *Id*. at 407.

Justice Walters wrote a concurring opinion to "note a small, but * * * important point about the application of the principle of *ejusdem generis*." *Id.* at 408. She explained that she agreed with the majority that "it is not always constrained by the principle of *ejusdem generis* when the legislature precedes the specific examples with the phrase 'including but not limited to.'" *Id.* She noted that

> "[t]he assumption underlying the principle of *ejusdem generis* is that the legislature intentionally has used specific examples to limit or narrow the meaning of a general term. In my experience, however, that is not always the case. The legislature may instead use examples to illustrate the applicability of a term, without intending to limit or narrow its common meaning, or to broaden the common meaning of a term. It is understandable to think that the phrase 'including but not limited to,' followed by a list of examples, conveys an intent to illustrate or to broaden, rather than to limit the meaning of a general term. After all, the phrase says that the general term is *not limited* to the examples. But as this case demonstrates, that phrase can mean that the examples given are not the only application of a general term, and in that sense, that the examples are not limiting, without also meaning that the examples do not perform a different narrowing function. In other words, a general statutory term may be limited *by*, even though it is not limited *to*, specific statutory examples. I write to point out that the phrase 'including but not limited to' is itself imprecise, and to urge that the legislature both decide the purpose for which it uses examples and convey that purpose as clearly as it can."

*Id.* at 408-09 (emphasis in original). She then provided an example of how, by giving three specific examples of "tree," the legislature could intend to alternatively narrow, illustrate, or broaden the dictionary definition of the general term "tree." In doing so, she further cautioned the legislature to "use care in selecting examples." *Id.* at 409.

To summarize, in *Schmidt*, the court concluded that, when the legislature has provided specific examples in conjunction with a general term, those specific examples provide useful context for interpreting the general term, and we are not free to ignore them. However, the court also acknowledged that when the legislature uses the phrase

"including but not limited to," the court is not necessarily bound by *ejusdem generis* because of the imprecise nature of that phrase, but that it will use the principle when it "provides useful guidance in interpreting a statutory term." *Id.* at 402. Justice Walters cautioned that the imprecise nature of the phrase "including but not limited to" could plausibly demonstrate the legislature's intent to limit or narrow the meaning of a general term, or to illustrate or even broaden the meaning of the term. Accordingly, she urged the legislature to "use care in selecting examples" and "express as clearly as possible the office that it expects its examples to serve." *Id.* at 410.

Unfortunately, here, the legislature's use of the imprecise phrase "including but not limited to" complicates our ability to confidently carry out the legislature's intent. Both parties persuasively argue contrary interpretations of the statute. Further, the legislative history is underwhelming on the exact point at issue in this case—what purpose the legislature expected the examples to serve. Nevertheless, although we share mother's concern that *ejusdem generis* can be of "questionable utility," we conclude that, in the case of ORS 419B.923(1), it provides guidance in interpreting the legislature's use of the general term "reasons" in the statute.

Ultimately, we agree with DHS that the specific examples provided in ORS 419B.923(1), although nonexclusive, serve to limit the court's authority to act under the statute. Before explaining why, however, we acknowledge that it is not out of the realm of possibility that the legislature intended to simply *illustrate* that the specific examples imported from ORCP 71 are allowable reasons for setting aside a judgment, but ultimately intended to grant the court authority to act in circumstances like those alleged by mother. And, importantly, we are not in the position to decide whether that *should* be within the juvenile court's authority. We simply note that mother has made a strong argument that, as a matter of policy, if, in certain exceptional circumstances, a TPR judgment no longer serves the best interests of the child, the court should have discretion to act given that the juvenile dependency code's charge is to

serve the best interests of the child.[2] Nevertheless, our task here is to best determine the legislature's intent with the information that we have and, based on the text and legislative history of the statute, we conclude that the legislature used the specific examples in ORS 419B.923(1) to perform a "narrowing function." *Schmidt*, 347 Or at 409 (Walters, J., concurring).

We reach that conclusion for several reasons. Beginning with the text of the statute, the plain meaning of the general term at issue in this case—"reasons"—is so wide-ranging that the legislature must have intended some limiting principle to define the bounds of a juvenile court's authority to act. That is, the legislature could not have intended to grant the juvenile court the authority to modify and set aside an order or judgment for literally any reason. Although mother asserts that the limiting principle is properly understood within the context of the primary purpose of the juvenile code—to allow the juvenile court the discretion to respond to the changing needs and best interests of children in its care—we are persuaded that it is more likely that the legislature included the specific examples in ORS 419B.923(1) to narrow the scope of "reasons" authorizing juvenile court action under the statute.

That is particularly likely for a reason pointed out by DHS. When reworking the procedural statutes in 2001, if the legislature had intended to retain, in total, the broad authority that existed in *former* ORS 419B.420 (1999), it did not need to integrate examples from ORCP 71 into the statute. The existing text of *former* ORS 419B.420 (1999) certainly would have been understood to encompass clerical error, excusable neglect, and newly discovered evidence, long accepted reasons for modifying or setting aside a judgment.

Further, the legislature's simultaneous enactment of ORS 419B.923(8)[3] undermines any likelihood that the

---

[2] Of course, DHS also raises important policy concerns regarding the finality of judgments, timeliness, and permanency that are also within the framework of the dependency code.

[3] ORS 419B.923(8) provides that "[t]his section does not limit the inherent power of a court to modify an order or judgment within a reasonable time or the power of a court to set aside an order or judgment for fraud upon the court."

legislature intended to use the examples only as illustrations and not as limiting guideposts. The legislative history indicates that the legislature based ORS 419B.923(8) on ORCP 71 C—which allows, in part, a court to exercise its inherent authority to modify or set aside a judgment for fraud upon the court. Testimony, Senate Judiciary Committee, HB 2611, Apr 30, 2001, Ex I (in connection with statement of Kathie Osborn) (hereinafter Section-by-Section Analysis HB 2611-1). If ORS 419B.923(1) was intended by the legislature to have the breadth of scope that mother urges, the text in ORS 419B.923(8) would be surplusage. As a general rule, "we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage." *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005).

In addition, the legislative history indicates that, in enacting ORS 419B.923(1), the legislature "substantially rework[ed] the provisions of ORS 419B.420 and ORCP 71 to specify procedures for relief from judgments and orders." Section-by-Section Analysis HB 2611-1. Although the meaning of that statement is unclear, to some extent, it suggests that the legislature intended to move away from the broadly stated authority in *former* ORS 419B.420 to something closer to, though not as limited as, the scope of ORCP 71 A and B.

Finally, we note that, given the competing policies at play in the juvenile dependency code—achieving permanency in a timely manner, serving the best interests of the child, and advancing the preference that families stay together—we expect that, if the legislature had intended to authorize the juvenile court to set aside or modify a TPR judgment after a fundamentally fair TPR proceeding because of something akin to "changed circumstances," it would have done so more explicitly, as it has done with respect to permanent guardianships established under ORS 419B.365. Once a permanent guardianship has been established under ORS 419B.365 (providing that the grounds for granting a permanent guardianship are the same as those for TPR), the legislature has provided specific parameters to the juvenile court under which it can review, modify, or vacate a guardianship order upon the court's own motion or the motion of a party,

though the statute explicitly precludes a parent from moving to vacate a permanent guardianship. ORS 419B.368. It strikes us as odd that the legislature would provide specific procedures and substantive grounds for modifying or vacating a permanent guardianship but intend for the juvenile court to have broad authority to set aside a TPR judgment without similarly explicit guideposts.

Having concluded that *ejusdem generis* provides useful guidance to interpret ORS 419B.923(1), we must apply that principle. That is, we must, if we can, identify a common characteristic among the listed examples. *Schmidt*, 347 Or at 405. We then determine whether mother's allegations, "even though not one of the listed examples, contains that characteristic and, thus, falls within the intended meaning of the general term." *Id.* Here, we do not need to identify with precision the characteristic common to clerical mistake, excusable neglect, and newly discovered evidence, except to say that DHS's identification of the common characteristic—that the order or judgment is defective in form or the result of an unfair proceeding—is certainly close to the mark. *See A. D. G.*, 260 Or App at 539 (concluding that the court could act under ORS 419B.923(1) to address the mother's "colorable claim of a violation of her due process rights"); *see also T. L.*, 269 Or App at 464 (deciding that the father's "claim of inadequate assistance of trial counsel—a claim also based on due-process concerns—would similarly fall within the court's broad discretionary authority to address under ORS 419B.923(1)" (citation omitted)). Mother does not seriously argue that her allegations of changed circumstances share a common characteristic with the specific examples,[4] and we do not see one. Accordingly, we conclude that a change in circumstance like that alleged by mother since entry of the TPR judgment is not a "reason" that would

---

[4] Mother articulates compelling arguments for why setting aside a termination judgment that no longer serves the best interests of a child makes sense as a matter of public policy and in light of the general goals of the juvenile dependency code. As noted, although we conclude that the legislature did not intend for circumstances like mother's to be a basis for setting aside a termination judgment under ORS 419B.923(1), mother's arguments may well be appropriate to address to the legislature. In addition, this record gives us pause to wonder why DHS could not facilitate an open adoption even under circumstances like these where a termination judgment has been entered but may no longer serve the best interests of the child.

allow a court to act under ORS 419B.923(1) to set aside a TPR judgment.

Affirmed.