Argued and submitted June 10, affirmed September 21, 2016, petition for review denied February 16, 2017 (361 Or 100)

In the Matter of M. M. A.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

M. M. A.,
*Respondent,*

*v.*

B. P.,
*Appellant.*

Multnomah County Circuit Court
15JU04240;
Petition Number 111283;
A160781 (Control)

In the Matter of M. M. A.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

M. M. A.,
*Respondent,*

*v.*

B. P.,
*Appellant.*

Multnomah County Circuit Court
15JU02789;
Petition Number 111188;
A161100

381 P3d 1073

Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services, argued the cause and filed the brief for appellant.

Erin K. Galli, Assistant Attorney General, argued the cause for respondent Department of Human Services. With her on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Christa Obold Eshleman argued the cause and filed the brief for respondent M. M. A.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**EGAN, J.**

In this consolidated appeal, father appeals from a 2015 judgment asserting jurisdiction over his child, M, and a judgment terminating father's parental rights over M. Father argues that the 2015 jurisdictional judgment is invalid, as a matter of law, because it was inextricably linked to a 2014 jurisdictional judgment, which has since been reversed on appeal. *Dept. of Human Services v. B. P.*, 277 Or App 23, 370 P3d 536 (2016). Father argues further that the juvenile court lacked the authority to terminate his parental rights as a result of our reversal in *B. P.* We conclude that the juvenile court properly asserted jurisdiction based on the 2015 petition, which contained allegations that were not dependent on the validity of the 2014 jurisdictional judgment. We also conclude that the juvenile court had authority to terminate father's parental rights. We therefore affirm both the jurisdictional and termination judgments.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *2014 Jurisdictional Judgment*

The facts, which are largely procedural, are undisputed. In March 2014, the Department of Human Services (DHS) removed M from father and disallowed contact between father and M based on allegations of sexual abuse, drug use, and neglect. In October 2014, the juvenile court held a three-day hearing on the allegations against father. The child's mother, who had previously admitted to having mental health issues that interfered with her ability to safely parent the child, testified at the hearing. The juvenile court issued an order pertaining solely to father. The court ruled that DHS had failed to prove that (1) father sexually abused M, (2) M's statement that father sexually abused her warranted jurisdiction, (3) father allowed M to reside in unfit conditions, (4) father failed to provide M with routine meals, and (5) father exhibited a pattern of drug use. However, at the conclusion of the hearing and upon consent of both parties, the court amended the petition and asserted jurisdiction over M based on findings that

"father was neglectful toward the child by not enrolling the child in school from October through December of 2013,

and by regularly failing to bring the child to school on time. Furthermore, the child's educational and social needs were not being met because of this neglect and the child suffered harm by falling behind and needing to repeat her kindergarten year in school."

In November 2014, the juvenile court referee conducted a hearing and entered an order regarding both parents. The juvenile court affirmed the referee's order and entered a judgment establishing dependency jurisdiction over M (the 2014 jurisdictional judgment).

Father appealed the 2014 jurisdictional judgment, arguing that the court's findings that father neglected M's educational and grooming needs and allowed M to have contact with her mother despite a contrary visitation order were insufficient to support juvenile court jurisdiction. *B. P.*, 277 Or App at 25. Neither DHS nor M defended the merits of the juvenile court's decision. Rather, they argued that the decision finding M within the jurisdiction of the court was not made in an appealable judgment. *Id.*

On May 1, 2015, while father's appeal was pending, the juvenile court changed M's permanency plan from reunification to adoption, and authorized and ordered DHS to file a petition to terminate both parents' parental rights. DHS filed a petition to terminate father's parental rights on June 2, 2015.

B. *2015 Jurisdictional Judgment*

On July 17, 2015, DHS filed a second dependency petition with allegations pertaining to father only. DHS then filed an amended version of the second dependency petition on August 3, 2015; again, the petition contained allegations pertaining solely to father. Specifically, the amended second petition alleged that M's conditions and circumstances endangered her welfare because: (1) father had "a pattern of residential, relationship, and lifestyle instability which impair his ability to safely and adequately care for the child"; (2) since October 2014, father had not visited M or maintained contact with DHS, indicating that he was either unwilling, or unable, to meet M's special needs; (3) since March 2014, father had "failed to participate in

court-ordered therapeutic services designed to help him recognize and reunite the special needs of his child"; (4) M had been diagnosed as "suffering from sexual abuse of a child (by history) and neglect of child from history," and father was unable and unwilling to meet M's special needs; (5) father had no contact with M since her removal in March 2014, despite visitation having been made available to him since November 2014; and (6) father failed to maintain regular communication with DHS. The petition also alleged that M was dependent for care and support from DHS because "father has not engaged in services designed to reunite him with his child, and the child requires foster care placement." Lastly, the petition alleged that father abandoned M "physically and emotionally," failed to provide M with the "care or education required by law," and failed to provide M with the "care, guidance and protection" necessary for her physical, mental, or emotional well-being.

At the start of the hearing, DHS moved to amend the petition once again by removing the words "court-ordered" from allegation number three, and by changing M's diagnosis in allegation four from "sexual abuse of a child (by history) and neglect of child from history" to "post-traumatic stress disorder (including primary symptoms of PTSD, along with characteristics of complex developmental trauma)," and "continue to monitor for attention deficit hyperactivity disorder." Father did not object to those amendments or ask for a continuance. Then, upon DHS's request, the juvenile court took judicial notice of the case file from the 2014 dependency petition. Father did not object to the court taking such judicial notice. Lastly, counsel for DHS clarified that it was seeking wardship "based upon the absence of [father] in [M's] life since [December 2014]."

During the hearing, father noted that there was an ongoing appeal of the 2014 jurisdictional judgment and sought to introduce into evidence the appellate briefs filed in that matter. Father argued that the briefs were relevant to show why DHS had filed a second dependency petition that was substantively similar to the first, rather than amending the original petition—namely, that DHS was trying to bolster a weak jurisdictional finding that would likely be

overturned on appeal. Father noted that both DHS and M had conceded that the evidence put forth in the 2014 hearing was insufficient to support a jurisdictional finding.

In an effort to understand father's argument about the relevance of the pending appeal, the court stated:

> "I think the argument is that there shouldn't have been jurisdiction in the first place, * * * and if there should not have been jurisdiction in the first place, then the father shouldn't have had to do all of these things that it's alleged he did not do, and since there shouldn't have been jurisdiction, then it's kind of no-harm/no-foul; doesn't matter that he didn't do those things, because he shouldn't have had to in the first place, so the allegations—the underpinning of the allegations is without merit and therefore the allegation should be dismissed."

Father's counsel agreed to the court's characterization of his argument. The court ultimately did not admit the appellate briefs, concluding that

> "[t]he issues in this case that I'm hearing now is there's a child who is damaged. Period. There are certain things that the Court required the father to do and that the father should have done regard—if there was no jurisdiction—if there was no jurisdiction; if the Juvenile Court hadn't been involved and this child were damaged for whatever reason, a parent who is taking adequate care of that child would have done—would have gone to a therapist, would have sought professional help, would have stayed in contact with that child, all of the things that are alleged.
>
> "So the rightness or the wrongness of the original taking of jurisdiction is frankly irrelevant to the decision as we're sitting here today."

On October 15, 2015, the juvenile court asserted jurisdiction over M on several grounds (the 2015 jurisdictional judgment): (1) M's PTSD and her "host of emotional, psychological, and behavioral problems" and father's unwillingness to meet or acknowledge those special needs; (2) father's *de facto* "abandonment" of M as a result of his failure to visit with M since November 2014, and the consequent "profound" harm to M; and (3) father's failure to participate in court-ordered therapeutic services.

On November 24, 2015, a juvenile court referee conducted an "annual review" permanency hearing and entered an order continuing the permanency plan of adoption, which had been first determined at the May 1, 2015, hearing after entry of the 2014 jurisdictional judgment.

## C. *The Termination Judgment*

On June 15, 2015, father was summoned to personally appear in court to admit or deny the allegations contained in the termination of parental rights (TPR) petition that had been filed on June 2, 2015. He appeared for that purpose on July 30, 2015, and the case was set over for "call" on December 10, 2015, at 8:30 a.m., in the Juvenile Justice Complex. The order stated that father's attorney could not attend the hearing in lieu of father, and warned, "If a parent fails to appear in person at call, the court, without further notice and in the parent's absence, may immediately terminate the parent's rights." Father signed the order, acknowledging his receipt of it.

On November 24, 2015, DHS amended the petition to terminate father's parental rights to include the findings of both jurisdictional judgments. The amended petition stated that it was being filed "pursuant to the direction of [the juvenile court] as the court changed the plan to achieve adoption on May 1, 2015." The petition also stated that M was within the court's jurisdiction based on the October 7, 2014, finding that M's conditions and circumstances "were such as to endanger her own welfare and that her parents failed to provide her with the care, guidance, and protection necessary for her physical, mental, and emotional well-being." The specific allegations contained in the petition included that father was unfit to parent because of his residential instability, his unwillingness or inability to meet M's special needs, his failure to participate in visitation and in therapeutic services, his failure to provide for M's physical and psychological needs for at least six months prior to the filing of the amended TPR petition, and father's abandonment of M; each of those allegations had been adjudicated during the 2015 dependency proceeding. The petition also alleged that father subjected M to physical neglect and failed to provide for her educational needs, as well as provide adequate

grooming; those allegations had been adjudicated during the 2014 dependency proceeding.

Father failed to appear in court on December 10, 2015. Over objection from father's attorney, the juvenile court permitted DHS to present a *prima facie* case in father's absence. Father's attorney sought to adjourn the proceedings for father to appear and because of the fact that both the 2014 and 2015 jurisdictional judgments were pending appeal. Counsel stated:

> "[W]e simply don't believe it's appropriate to move forward on the Termination Petition when the underlying basis of jurisdiction is null or soon will be null and the new basis for jurisdiction is on appeal with a matter—with an emergency stay pending and with father given precious little time to change his circumstances."

Counsel argued further:

> "[T]he State has failed to gain the necessary permission from the Court to file the Termination Petition related to the new jurisdictional findings by Judge Svetkey made in October of 2015. They only have permission, I submit, to move forward on the original Termination Petition and its findings related to the original jurisdiction, all of which will soon be moot because jurisdiction never should have been taken for a child who was not mandatorily required to attend school under Oregon law, failing to attend school (indiscernible)."

The juvenile court denied counsel's request for an adjournment and, after receiving evidence from DHS, terminated father's parental rights (the TPR judgment).

### D.   *Subsequent Procedural History*

On March 16, 2016, this court reversed the 2014 jurisdictional judgment. We held that the judgment was reviewable on appeal and accepted DHS's and M's concessions that the allegations found to be proved by the juvenile court were insufficient to support jurisdiction over M. *B. P.*, 277 Or App at 25.

Father now appeals from both the 2015 jurisdictional judgment and the TPR judgment. In his first three assignments of error, he challenges the juvenile court's

authority to terminate father's parental rights because the termination petition was predicated upon the now-reversed 2014 jurisdictional judgment and the May 1, 2015, permanency judgment, which in turn was also premised on the now-reversed 2014 jurisdictional judgment. In his fourth assignment of error, father challenges the 2015 jurisdictional judgment, arguing that, to the extent it was meant to incorporate the allegations adjudicated in 2014, the reversal of the 2014 jurisdictional judgment renders the 2015 jurisdictional judgment invalid as a matter of law. In the alternative, father argues that the 2015 jurisdictional judgment is invalid because the 2015 petition's allegations pertained solely to father and not to mother. Father argues that the juvenile court's failure to consider the totality of M's circumstances, including her mother's fitness to parent, requires us to vacate and remand the 2015 jurisdictional judgment.

## II.  ANALYSIS

### A.  *2015 Jurisdictional Judgment*

We begin with father's fourth assignment of error, which challenges the validity of the 2015 jurisdictional judgment. Although father appears to argue that his challenges to the 2015 jurisdictional judgment are preserved, he nevertheless urges us to exercise our discretion to correct those errors as plain. DHS and M maintain that the claimed errors are unpreserved and not plain. They also oppose father's claim on the merits, arguing that the 2015 jurisdictional judgment is not invalid because the 2015 petition was a "stand-alone petition, independent from the initial petition." Thus, they argue, the reversal of the 2014 jurisdictional judgment had no effect on the validity of the 2015 jurisdictional judgment. DHS and M also challenge father's assertion that the court erred in asserting jurisdiction over M in 2015 by not considering the fitness of mother, arguing that father failed to preserve that contention and that "[n]othing in the juvenile code requires a court to reconsider automatically its prior determination of a parent's unfitness when adjudicating new allegations of unfitness as to the other parent."

For the reasons that follow, we conclude that father preserved—to the extent possible—his claim that our later

reversal of the 2014 jurisdictional judgment invalidated the 2015 jurisdictional judgment. However, we conclude that the reversal of the 2014 judgment did not render the 2015 judgment invalid as a matter of law, and that the juvenile court did not, therefore, err in asserting jurisdiction over M based on the 2015 petition. We conclude further that father failed to preserve his claim that the 2015 jurisdictional judgment was improperly based on allegations pertaining solely to father, and that any error committed by the juvenile court in asserting jurisdiction based on those allegations is not plain.

Father preserved, to the extent possible, his argument that our reversal of the 2014 jurisdictional judgment in *B. P.* invalidated the 2015 jurisdictional judgment as a matter of law. At the 2015 hearing, father alerted the juvenile court to the pending appeal of the 2014 judgment and attempted to admit copies of briefs filed in that appeal. He argued that they were relevant to show that DHS had filed a new dependency petition only because the 2014 jurisdictional judgment was weak and likely to be overturned on appeal. Father argued that DHS was merely trying to bolster weak allegations by filing a new petition that was not substantively different from the earlier allegations. The juvenile court understood father's contention to be that, if jurisdiction was not valid based on the allegations in the 2014 petition, then the allegations against father in the 2015 petition—namely, failing to avail himself of therapeutic services and visitation with M—had no legal basis and should be dismissed. Father agreed with that characterization of his argument. Thus, although we had not yet reversed the 2014 jurisdictional judgment at the time of the 2015 hearing, the juvenile court was aware of father's contention that an eventual reversal could affect the validity of the allegations contained in the 2015 petition. The court considered that argument and rejected it, finding that the validity of the 2014 jurisdictional judgment was irrelevant to the court's determination on the 2015 petition. Neither the court nor the parties were taken by surprise, misled, or denied opportunities to meet father's argument, and we therefore conclude that the claim was preserved to the extent possible under the somewhat unusual procedural history of this

case. *See Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995) (preservation is required to ensure that "parties are not taken by surprise, misled, or denied opportunities to meet an argument").

We now turn to the merits of that argument, which requires us to analyze the effect, if any, of our reversal of the 2014 jurisdictional judgment on the juvenile court's assertion of jurisdiction in 2015. That, in turn, requires us to analyze whether the allegations found to be proved in the 2015 petition were linked to those adjudicated in 2014. We conclude that the 2015 petition, and the resulting jurisdictional judgment, contained separate allegations from those that were reversed in *B. P.* Thus, the juvenile court did not err, as a matter of law, in taking jurisdiction over M based on the 2015 petition.

As DHS points out in its brief, the 2015 petition seeking jurisdiction over M was assigned a distinct case number from the 2014 jurisdictional petition. The new petition did not reference the 2014 petition or the juvenile court's findings that led the court to assert jurisdiction over M in 2014. Nor did the new petition indicate that it was meant to serve as an amendment to the 2014 petition under ORS 419B.809(6) (stating that dependency petitions may be amended "at any time"). And, despite father's contention to the contrary, the record does not indicate that the parties and the court were laboring under the impression that the 2015 petition was an amendment to the 2014 petition, or that it necessarily incorporated all of the allegations adjudicated in 2014.[1] Indeed, at the start of the hearing, DHS clarified that the issues being adjudicated were "essentially what has gone on in the case since December of 2014 forward," which occurred after the 2014 judgment had been rendered.

We also reject father's contention that the allegations contained in the 2015 petition were substantively similar and inextricably linked to those alleged and found to be proved during the 2014 dependency proceeding. The 2014 petition alleged that father had sexually assaulted M,

---

[1] We note that father does not argue that DHS lacked the authority to file a second dependency petition in lieu of amending the first petition, and thus, we do not address that argument.

used drugs, allowed M to reside in unfit conditions, and that father was neglectful by not enrolling M in school, providing her with routine meals, or grooming her. The juvenile court ultimately asserted jurisdiction based on its finding that father had neglected to enroll M in school from October through December of 2013, had regularly failed to bring M to school on time, and that M suffered resulting harm by falling behind and needing to repeat her kindergarten year in school.

The 2015 petition, on the other hand, alleged that father demonstrated a pattern of instability, that he did not participate in therapeutic services offered to him to help him understand and manage M's special needs, that M suffered from PTSD, that he physically and emotionally abandoned M (specifically, that he had no contact with M since her removal and had not visited M since after the 2014 jurisdictional hearing), that he did not provide M with the care or education required by law, and did not provide her with the care, guidance, and protection necessary for M's physical, mental, or emotional well-being. The juvenile court ultimately asserted jurisdiction over M based on (1) M's PTSD and her "host of emotional, psychological, and behavioral problems" and father's unwillingness to meet or acknowledge those special needs; (2) father's *de facto* "abandonment" of M as a result of his failure to visit with M since November 2014, and the consequent "profound" harm to M; and (3) father's failure to participate in court-ordered therapeutic services.

We find no basis to conclude that the juvenile court's assertion of jurisdiction over M was inextricably linked to the 2014 jurisdictional findings that were subsequently reversed by us in *B. P.* At the outset of the court's oral ruling, it stated, "I have a petition sitting here in front of me, and the petition has allegations with regard to the conditions and circumstances of this child as we're sitting here today." The court then asserted jurisdiction over M on three bases, each of which related to circumstances arising after the 2014 jurisdictional hearing. Indeed, the first basis on which the court asserted jurisdiction related to M's special needs that existed at the time of the 2015 jurisdictional hearing, and father's unwillingness to acknowledge

those needs. That finding was based on M's psychological well-being evaluation, which took place in May 2015, and her resulting PTSD diagnosis. The second basis on which the court asserted jurisdiction was father's failure to visit M since November 2014, after the 2014 jurisdictional judgment had been rendered.

The final basis for asserting jurisdiction was father's failure to participate in therapeutic services offered to help him understand and manage M's psychological and emotional needs.[2] Father argues that this basis was inextricably linked to the 2014 jurisdictional judgment: "[T]he department's theory was that jurisdiction was warranted on the new allegations because father had failed to take[ ] the steps necessary to ameliorate the original bases for jurisdiction and the conditions attendant to [M's] abrupt removal from father's care and tenure in foster care." However, the record demonstrates that the juvenile court viewed father's failure to engage in therapy as independent from the 2014 dependency proceedings. The court explained:

> "This father hasn't made any effort to ascertain generally how [M] is doing or specifically how her emotional, psychological, and behavioral health are; he did not bother to stay awake to listen when that information was presented in this trial; he did not provide this child with cards or letters, even on her birthday; and he failed to participate in her therapy. He did not attend the second day of trial. He did all of this to her detriment, and to the endangerment of her welfare, either (or maybe both) because he thought somehow that that would impact the viability of his appeal, which is absurd, or because he didn't want to. It is this Court's opinion that it is because he didn't want to, because he didn't want to follow the rules of what the agency, Court, lawyers, or anybody told him. The harm that he has caused this child by abandoning her in these ways is profound and continues."

---

[2] Although the 2015 jurisdictional judgment states that "father has failed to participate in court-ordered therapeutic services," we note that the jurisdictional petition was amended at the start of the hearing to remove the words "court-ordered." 281 Or App at 222. There was no objection to that amendment, and the parties and the court proceeded with the understanding that father was alleged to have failed to participate in therapy designed to help him recognize and manage M's special needs.

The juvenile court was aware that the therapeutic services in which father failed to participate related to the 2014 judgment that was pending on appeal. The court nevertheless found that father should have participated in therapy for the well-being of his child, and that father's failure to attend therapy was cause for jurisdiction, independent of the 2014 jurisdictional judgment. We agree with the court's determination, and conclude that the 2015 jurisdictional judgment was not dependent on the 2014 jurisdictional judgment, but was based on the new and substantively different allegations adjudicated in 2015. We therefore conclude that the 2015 jurisdictional judgment is valid, notwithstanding our subsequent decision in *B. P.* that reversed the 2014 jurisdictional judgment.

We turn to father's alternative claim that the 2015 jurisdictional judgment is nevertheless invalid because the juvenile court did not consider mother's fitness to parent when it rendered its decision. Father acknowledges, and we agree, that this contention is unpreserved, but he asks us to exercise our discretion to correct the error under the plain-error doctrine. We conclude that any error committed by the juvenile court is not plain from the face of the record, and thus decline to review defendant's unpreserved claim.

"An error is 'plain' 'if (1) the error is one of law, (2) the error is obvious, not reasonably in dispute, and (3) the error appears on the face of the record, so that we need not go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable.'" *State v. Hanson*, 280 Or App 196, 201, 380 P3d 1136 (2016) (quoting *State v. Corkill*, 262 Or App 543, 551, 325 P3d 796, *rev den*, 355 Or 751 (2014)). Here, father fails to establish the second prong of the plain-error test— that the purported error is obvious and not reasonably in dispute.

At the time of the 2015 jurisdictional hearing, the 2014 jurisdictional judgment was still a valid judgment. The juvenile court took judicial notice of the 2014 case file, which included admissions by mother of her inability to parent M. Father did not object to the court's consideration of the 2014 case file, acknowledged that the file contained an admission

by mother, and then presented no evidence to challenge mother's admission. Under those circumstances, it cannot plainly be said that the juvenile court failed to consider mother's fitness as part of the totality of M's circumstances in asserting jurisdiction over M. *Cf. Dept. of Human Services v. A. F.*, 268 Or App 340, 348, 341 P3d 858 (2014) (finding that the juvenile court erred in asserting jurisdiction over child where prior stipulations of the mother were challenged at the father's hearing). Indeed, we have held that "a court may make findings about one parent and then proceed to make findings about the other parent before finally taking jurisdiction based on that totality of evidence[,]" provided that "the conditions and circumstances that give rise to jurisdiction must exist at the time of the hearing." *Id.* at 349. Here, the record does not plainly demonstrate that the juvenile court did not consider mother's previous admission when it asserted jurisdiction over M. And, it is not obvious and free from dispute that the juvenile court would have erred in relying on that admission. In *B. P.*, we did not hold that the admissions made by mother were invalid or unreliable, but, rather, accepted DHS's concession that the evidence *as a whole* was legally insufficient to demonstrate that M's conditions or circumstances at the time of the 2014 hearing demonstrated a reasonable likelihood of harm to M's welfare. 277 Or App at 36. We therefore decline to review father's unpreserved claim that the court failed to consider the totality of M's circumstances in asserting jurisdiction over her.

## B.  *TPR Judgment*

We now turn to father's challenges to the TPR judgment, raised in his first three assignments of error. Father argues that the juvenile court lacked the authority to terminate father's parental rights because the termination petition was predicated upon the now-reversed 2014 jurisdictional judgment and the May 1, 2015, permanency judgment, which in turn was also premised on the now-reversed 2014 jurisdictional judgment.[3] Father argues that, "to the

---

[3] Father does not challenge the juvenile court's findings of fact or conclusions of law. He merely challenges the court's authority to conduct the trial and to render a termination judgment.

extent that this court concludes that father was required to preserve his claims of error and failed to do so," we should nevertheless review the errors under the plan error doctrine. *See* ORAP 5.45(1); *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 382, 823 P2d 956 (1991).

DHS and M contend that father's claims are procedurally barred for several reasons. First, father waived his right to appeal the TPR judgment when he failed to appear at the termination hearing. Second, father's challenges to the TPR judgment are unpreserved, and any error was not plain. And, third, because we had not yet reversed the 2014 jurisdictional judgment at the time the juvenile court entered the termination judgment, the juvenile court had "no reason to consider whether it lacked authority to terminate father's parental rights in the absence of the 2014 judgment," and thus it did not err in conducting the hearing and entering the TPR judgment. We reject DHS and M's contentions that father's claims are procedurally barred from appellate review. However, we conclude that the juvenile court had the authority to terminate father's parental rights.

We disagree with DHS and M's contention that father waived his right to appeal the TPR judgment when he did not appear for call on December 10, 2015. In challenging father's ability to appeal the TPR judgment, DHS and M rely primarily on our decision in *State ex rel Juv. Dept. v. Jenkins,* 209 Or App 637, 646, 149 P3d 324 (2006), *rev den,* 342 Or 416 (2007). In *Jenkins,* the parent had been served with a summons to personally appear in court *to admit or deny* the allegations contained in the termination petition. When the parent failed to appear, the juvenile court permitted DHS to present a *prima facie* case and terminated the parent's rights. The result was a judgment *for want of an answer,* which constituted a nonappealable default judgment under ORS 19.245(2).[4] After analyzing ORS 19.245(2)

---

[4] ORS 19.245(2) provides:

"A party to a judgment given by confession *or for want of an answer* may not appeal from the judgment except as follows:

"(a) A plaintiff, third party plaintiff or a party who pleaded a cross-claim or counterclaim may appeal from the judgment if the judgment is not in accord with the relief demanded in the complaint.

and its history, we concluded that the legislature did not intend to exclude judgments terminating parental rights from the requirements set forth under that statute. *Id.* at 641-44. We explained that, "generally under ORS 19.245, a defendant waives the right to appeal when he fails to file a written answer, or if he fails to appear in court at the time and place stated in the summons in the event that the governing statutes provide for an appearance in court in lieu of a written answer." *Id.* at 644. We explained further that "[t]o permit a defendant in a termination of parental rights proceeding to fail to appear at hearing and then to contest the judgment on appeal would be to offend the policy underlying ORS 19.245(2) as determined by [the Supreme Court]." *Id.* at 645.

We do not agree with DHS and M that *Jenkins* is factually similar to the instant case. Here, like in *Jenkins*, father was initially summoned to appear in court to admit or deny the termination allegations. However, unlike in *Jenkins*, father did, in fact, appear to deny the allegations against him. After he answered the petition by personally appearing in court, the case was set over for a trial on those allegations. When father did not appear in person for the termination trial, DHS was permitted to present a *prima facie* case and the juvenile court terminated father's parental rights *in absentia*. The key difference between the TPR judgment here and the one rendered in *Jenkins* is that the instant judgment was not *for want of an answer*. Thus, it does not constitute a default judgment as contemplated by ORS 19.245(2). *See Dept. of Human Services v. S. C. T.*, 281 Or App 246, 253-55, 380 P3d 1211 (2016) (dependency judgment rendered after the parents' nonappearance at jurisdictional hearing was not a default judgment under ORS 19.245(2), because the parents had personally appeared to answer the petition at an earlier date and the judgment was not for want of an answer). We therefore reject DHS and M's argument that father's failure to appear for the

---

"(b) A defendant may appeal from the judgment if the trial court has entered a default judgment against the defendant as a sanction or has denied a motion to set aside a default order or judgment.

"(c) A defendant may appeal from the judgment if it is void."

(Emphasis added.)

termination trial results in a waiver of his right to appeal the TPR judgment.

We also disagree with DHS and M that father's claims are unpreserved, and that the juvenile court had no reason to consider whether it lacked authority to terminate father's parental rights in the absence of the 2014 judgment. Just as he did at the jurisdictional hearing, father raised at the termination hearing his contention that the juvenile court could not proceed because the 2014 jurisdictional judgment was likely to soon be reversed on appeal and because father had also appealed the 2015 jurisdictional judgment. In response, DHS explained that dependency was adjudicated anew in October 2015, and that the termination petition had been amended in November 2015 based on the 2015 jurisdictional judgment. The juvenile court denied counsel's request to set over the trial and permitted DHS to proceed with its *prima facie* case. Thus, to the extent that preservation principles apply under these circumstances—where the 2014 jurisdictional judgment had not yet been reversed—we conclude that father preserved his claims regarding the court's authority to proceed at the termination hearing. And, contrary to the state's assertion, the juvenile court did consider its authority to terminate father's parental rights in light of the pending appeal of the 2014 judgment. We therefore conclude that father's challenges to the TPR judgment are properly reviewable on appeal.

However, father's arguments fail on the merits. In his first three assignments of error, father contends that the juvenile court erred in ruling that the 2014 jurisdictional judgment and the May 1, 2015, permanency judgment, authorized the filing and prosecution of the termination petition. To the extent that father is arguing that the juvenile court terminated father's parental rights based solely on the 2014 jurisdictional judgment and the May 1, 2015, permanency judgment, father is incorrect. It is clear from the allegations against father that the termination petition was based on both the 2014 and 2015 jurisdictional judgments. The majority of those allegations related to findings the court made during the 2015 dependency proceeding. Only one allegation—that father subjected M to physical neglect and failed to provide for her educational, social, and

grooming needs—pertained to the 2014 jurisdictional judgment. Furthermore, the May 1, 2015, permanency judgment that changed M's plan to adoption after the 2014 jurisdictional judgment was continued in a separate order rendered on November 24, 2015, after the 2015 jurisdictional judgment. Thus, father's argument that the termination petition, or the underlying permanency plan of adoption, was based solely on the 2014 jurisdictional judgment, which is now reversed, is unavailing and does not provide a basis for us to reverse the TPR judgment on appeal.

Affirmed.