676 March 12, 2025 No. 206

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of K. R. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. L. M.,
*Appellant.*

Josephine County Circuit Court
23JU04618; A183712 (Control)

In the Matter of J. R. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. L. M.,
*Appellant.*

Josephine County Circuit Court
23JU04631; A183713

In the Matter of A. R. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. L. M.,
*Appellant.*

Josephine County Circuit Court
23JU04633; A183714

In the Matter of M. I. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. L. M.,
*Appellant.*
Josephine County Circuit Court
23JU04634; A183715
In the Matter of J. K. C.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*v.*
S. L. M.,
Appellant.
Josephine County Circuit Court
23JU04637; A183716

Sarah E. McGlaughlin, Judge.

Argued and submitted December 5, 2024.

Elena C. Stross, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Inge Wells, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed and remanded.

**SHORR, P. J.**

In this consolidated appeal, mother appeals from judgments terminating her parental rights to five of her children, which were entered after a proceeding in which she attended remotely via Webex but was not physically present in the courtroom. Mother raises 40 assignments of error, which reduce to several arguments about why the juvenile court made procedural errors when it concluded that mother had not made an adequate first appearance in person and proceeded to a *prima facie* trial after which it entered judgments terminating mother's parental rights to all five children.[1] The Department of Human Services (DHS) argues in response that the termination of parental rights (TPR) judgments in question are not appealable and that we should dismiss the appeal. DHS argues in the alternative— if we conclude that the judgments are appealable and reach the merits—that the juvenile court did not err in the ways alleged by mother. We conclude that the judgments here are appealable and that the court erred in utilizing the process described in ORS 419B.819(7) to enter them. Therefore, we reverse and remand.

The underlying facts are, for the most part, undisputed. The juvenile court took dependency jurisdiction over three of mother's children in November 2021, based on mother's admission that her substance abuse interfered with her ability to safely parent the children. Mother then gave birth to twins in August 2022, and the juvenile court took jurisdiction over those infants in November of that year based on mother's substance abuse. In July 2023, mother left Oregon and moved to California. DHS filed petitions in September 2023 to terminate mother's parental rights to the five children on the grounds of unfitness and neglect. Mother was served with the summons and petitions on December 3, 2023, in California.

The summons instructed mother as follows:

"YOU ARE REQUIRED TO PERSONALLY APPEAR before the Josephine County Circuit Court, 301 NW F St.

---

[1] We note that mother mis-numbered her assignments of error by using duplicate numbers; therefore, although her brief refers to 35 assignments, there are actually 40.

Grants Pass, OR 97526 on the 8th day of January 2024 at 1:45 p.m. for a hearing on the allegations of the petition and to personally appear at any subsequent court-ordered hearing. **You must appear personally in the courtroom on the date and at the time listed above. An attorney may not attend the hearing in your place. Therefore, you must appear even if your attorney also appears.**"

(Uppercase and boldface in original.) The summons also notified mother as follows:

"**If you do not personal** [*sic*] **appear before the court as directed above, or do not appear at any subsequent court-ordered hearing**, the court may proceed in your absence without further notice and **TERMINATE YOUR PARENTAL RIGHTS** to the above-named child either on the date specified in this summons or on a future date and may make such orders and take such action as authorized by law."

(Uppercase and boldface in original.) The summons also contained the following information:

"If you contest the petition, the court will schedule a hearing on the allegations of the petition and order you to appear personally and may schedule other hearings related to the petition and order you to appear personally. **If you are ordered to appear, you must personally appear in the courtroom unless the court has granted you an exception in advance under ORS 419B.918** to appear by other means including, but not limited to, telephonic or other electronic means. An attorney may not attend the hearing(s) in your place."

(Boldface in original.)

Mother did not attend the January 8, 2024, hearing in person. Rather, she joined the hearing via Webex. At the outset of the hearing, in response to a question from the court, mother acknowledged that she had been directed to appear in person. She explained that she had "some underlying issues that prevent [her] from traveling." Mother explained that she was in a full-time outpatient treatment program and also did not have tires on her vehicle that would enable her to travel through the mountain pass or have the finances to purchase the necessary tires or chains. Mother had not asked DHS for assistance with travel. The

court appointed an attorney to represent mother, at mother's request.

The court then asked the other parties what their position was in regard to mother's failure to be there in person. DHS argued that it should be authorized to put on evidence and proceed with a *prima facie* case. DHS relied on the language in the summons and in ORS 419B.819, which required mother's personal appearance.[2] It also argued that, in accordance with ORS 419B.918 and a local rule in a presiding judge order that mirrors that statute, mother could have filed a written request to appear in a manner other than in person.[3] DHS stated that it could elicit testimony from a DHS worker about the conversation she had with a representative from mother's treatment program and mother's ability to take time away from the program for a court appearance. Counsel for DHS also stated that the I-5 mountain pass was not closed or stopped and noted that the court could take judicial notice of the weather conditions. DHS further argued that mother did not have a good faith reason not to appear in person, which is part of the assessment for the court when considering a request to appear other than in person. DHS asserted that the "real reason" mother did not want to appear was that there was an outstanding warrant from Josephine County Circuit Court for her arrest, and that she knew that she would be taken into custody if she came to court. In DHS's view, mother's attempt to appear remotely was made in bad faith. The attorney representing

---

[2] ORS 419B.819(2) states that the summons in a termination of parental rights case must require one of three options: (1) "[t]hat the parent appear personally before the court at the time and place specified in the summons for a hearing on the allegations of the petition"; (2) "[t]hat the parent appear personally before the court at the time and place specified in the summons to admit or deny the allegations of the petition"; or (3) that the parent file a written answer to the petition. ORS 419B.819(7) provides that "[i]f a parent fails to appear for any hearing related to the petition, or fails to file a written answer, as directed by summons or court order under this section or ORS 419B.820, the court, without further notice and in the parent's absence, may: (a) Terminate the parent's rights ***."

[3] There is no dispute that mother did not seek permission to appear remotely prior to the hearing. ORS 419B.918(1) provides, in part, that "[n]otwithstanding *** [ORS] 419B.819 ***, on timely written motion of a person showing good cause, a court may permit the person, instead of appearing personally, to participate in any hearing related to *** termination of parental rights *** in any manner that complies with the requirements of due process including, but not limited to, telephonic or other electronic means."

the children had no objection to DHS's motion to proceed with a *prima facie* case.

The court heard testimony from the DHS case-worker who had been assigned to the children's cases since summer 2023, Jennifer Oliver. Approximately a week before the hearing, mother informed Oliver by email that she had entered into a treatment program and provided Oliver with two names and a telephone number. Oliver spoke with the program manager and gathered information about the program and mother's involvement. Oliver did not learn of any reason why mother would be prohibited from attending the court hearing while being part of the treatment program; however, Oliver did not discuss attendance requirements or consequences of mother missing a group session. Oliver testified that mother had been avoiding communication with her since moving to California; however, at a monthly meeting in November, they reviewed upcoming court dates. Over the life of the case, Oliver has offered assistance with transportation; mother did not ask for help regarding the January 8 hearing. Oliver did not receive from mother any written notice or request not to appear in person at the hearing, and mother did not discuss with Oliver any intent to file such a motion with the court. Oliver testified that she has driven from Grants Pass to Sonoma County, California before and that it takes approximately six hours to do that drive; at certain times of the year, it can be icy and snowy.

The court stated that it was considering as evidence the initial conversation it had with mother regarding her personal appearance, and based on that indication, mother's counsel did not call mother to testify further. Mother's counsel argued that the court should not proceed with a *prima facie* case as requested by DHS.[4] He asserted that, as he understood it, his client had essentially made two motions: one was a request to appear at the hearing by Webex, or in the alternative, for the hearing to be postponed for mother to have time to assess her options for appearing and defending herself if she chose to. He noted that mother's expressed

---

[4] We note that the transcript reflects that there was confusion in the communication between mother's counsel and the court. The court ruled prior to mother's counsel making his argument, but then allowed counsel to argue and ultimately reaffirmed its earlier ruling.

reasons for her request were that she thought there was a penalty for absences from her treatment program and that she was concerned about driving up from California and possibly encountering bad weather in the mountain passes. According to mother, those reasons were good cause to appear at the hearing by Webex, and in any event, "she has appeared regardless." Mother's counsel stated that he believed the policy was that unless it was a contested hearing, a parent could appear at a hearing via Webex without filing a motion, and that he "would think an initial hearing wouldn't be a contested matter and it's the first appearance and [he] was just appointed. \*\*\* [B]ased on that policy she ought to be allowed to appear via WebEx." Mother's counsel also referred generally to "statutory rights" and federal due process rights and asserted that the court should not focus on mother's intention or why she was not there or what was going on with the warrant. At mother's attorney's request, the court took judicial notice of the fact that mother had been permitted to appear remotely for the December 8, 2023, status check in a dependency case.

The court found that mother had "not complied with the requirements of ORS 419B.918, which sets a procedure for which she could have requested a change of this hearing if it were necessary to allow her to appear on a different date and time." The court also stated that "taking [mother's] representations at face value, I still do not find those constitute good cause." The court noted that mother had been personally served with the summons that directed her to appear in person and had been orally told by the court, at least twice, that she would need to appear in person. The court also stated that it believed mother's "failure to appear is due to her decision not to face the consequences of being within the state of Oregon while she has an outstanding warrant." In conclusion, the court stated that "taking all the circumstances together, [it did] not find good cause to excuse [mother's] failure to appear in person" and would allow DHS to proceed with a *prima facie* case on the allegations in the termination of parental rights petition. The court reiterated that mother "was directed to appear here in person" a number of times and "made no efforts to appear another way prior" to the hearing.

The juvenile court proceeded with DHS's *prima facie* case. Mother and her attorney remained connected via remote technology but did not participate in that portion of the hearing. Ultimately, the court ordered that mother's parental rights to the five children be terminated. The judgments terminating mother's rights to the five children were entered by the juvenile court on February 7, 2024. The judgments state that "mother of the above-named child[] joined the hearing via Webex but did not appear in person as previously ordered by the court and as summoned, although served as required by law. [An attorney] was appointed by the court and appeared on behalf of [mother]." The judgments also contain a finding regarding mother's failure to appear in person: "Mother's oral representations as to her remote appearance did not constitute good cause for her failure to appear in person, and mother failed to file with the court a timely, written motion, showing good cause to appear by remote means as required by ORS 419B.918." Mother appealed.

We begin with appealability. ORS 19.245(2) limits the ability to appeal from a default judgment; it states, in part, that "[a] party to a judgment given by confession or for want of an answer may not appeal from the judgment."[5] We have previously held that that statute applies to termination of parental rights proceedings. *State ex rel Juv. Dept. v. D. C. J.*, 209 Or App 637, 645, 149 P3d 324 (2006), *rev den*, 342 Or 416 (2007). In *D. C. J.*, the father, who was incarcerated, had been served with a summons and directed to appear before the juvenile court at a specific date and time; however, the father did not appear and the court permitted DHS to present a *prima facie* case, which led to the judgment terminating the father's rights. *Id.* at 639-41. We considered the question of "whether the legislature intended ORS 19.245(2) to be applicable to default judgments that terminate parental

_____

[5] ORS 19.245(2) provides certain exceptions for when a defendant may appeal from a default judgment, including "if the trial court has entered a default judgment against the defendant as a sanction or has denied a motion to set aside a default order or judgment" or if the judgment is void. Mother did not file a motion to set aside the judgment and has not asserted that the judgment is void. Mother argues in the alternative that the juvenile court entered the judgment here as a sanction for her failure to appear in person. Given our conclusion that the judgment here is appealable, we need not reach that argument.

rights" and concluded that "we perceive[d] no barrier to concluding that the legislature intended ORS 19.245 to apply to judgments rendered under the statutes that govern the termination of parental rights." *Id.* at 644, 645.[6] We dismissed the appeal, explaining that:

> "To permit a defendant in a termination of parental rights proceeding to fail to appear at hearing and then to contest the judgment on appeal would be to offend the policy underlying ORS 19.245(2) as determined by the above-cited Supreme Court decisions. Father's failure to file an answer in this case or to appear at the time and place announced by the summons is tantamount to his consent that the court grant the relief requested by the petition. Once the state presented a *prima facie* case, his failure to contest that evidence left nothing for the trial court to adjudicate. He has therefore, in effect, waived his right to appeal by leaving no issue in the case to be adjudicated. Under the circumstances, ORS 19.245 compels us to dismiss his appeal for lack of an appealable judgment."

*Id.* at 645-46 (footnote omitted); *see id.* at 642-44 (discussing Oregon Supreme Court decisions that characterize default judgments as "consent" by the defendants); *see also Dept. of Human Services v. A. C. L. R.*, 298 Or App 690, 450 P3d 56 (2019) (appeal dismissed for lack of appealable judgment when the mother had been served with summons to personally appear before the court but did not appear as directed and default judgment was entered).

However, we have also previously distinguished *D. C. J.* and have held that certain termination of parental rights judgments entered after a *prima facie* case were appealable. In *Dept. of Human Services v. S. C. T.*, 281 Or App 246, 253-54, 380 P3d 1211 (2016), *rev den*, 360 Or 752 (2017), and *rev den*, 360 Or 851 (2017), the parents had initially responded to the summons by appearing in person on a particular date in order to admit or deny the petition. The parents also appeared at five subsequent hearings, but

---

[6] We note that although the term "default judgment" is not used in the juvenile code, ORS chapters 419A, 419B, and 419C, we have continued to use that term in our case law. *See, e.g.*, *Dept. of Human Services v. A. C. L. R.*, 298 Or App 690, 450 P3d 56 (2019); *Dept. of Human Services v. P. W.*, 296 Or App 548, 439 P3d 1042 (2019); *Dept. of Human Services v. B. P.*, 281 Or App 218, 381 P3d 1073 (2016), *rev den*, 361 Or 100 (2017).

they were absent from a court appearance at which they had been ordered in writing to appear in person. *Id.* at 249-50. In the parents' absence, DHS presented a *prima facie* case and, ultimately, TPR judgments were entered. *Id.* at 250-51. We stated that *D. C. J.* was distinguishable because in that case the father had failed to answer because he failed to appear at the hearing and failed to respond to the TPR summons as directed, whereas in *S. C. T.*, the "parents answered because they responded to the summons in the manner directed by appearing personally to admit or deny the petition." *Id.* at 255. We concluded that the judgments in *S. C. T.* were appealable. *Id.*

Similarly, in *Dept. of Human Services v. B. P.*, 281 Or App 218, 234, 381 P3d 1073 (2016), *rev den*, 361 Or 100 (2017), we concluded that the facts of *D. C. J.* were different than in the case before us because, in *B. P.*, the father did "appear to deny the allegations against him," and after he answered by appearing in court, the case was set over for further proceedings. The father was ordered in writing to attend the subsequent hearing in person, but he failed to appear, and the court permitted DHS to conduct a *prima facie* TPR case. *Id.* at 224-25. We stated that the "key difference" between the TPR judgment entered in *B. P.* and the one entered in *D. C. J.* was that "the instant judgment was not *for want of an answer.* Thus, it does not constitute a default judgment as contemplated by ORS 19.245(2)." *B. P.*, 281 Or App at 234 (emphasis in original).

DHS contends that, here, mother failed to personally appear for the initial appearance on the petitions as directed by the summons, and that because her attempt to appear via Webex did not constitute a legal appearance to admit or deny the allegations in the petitions, the termination judgments were entered "for want of an answer" and they are not appealable. Mother responds that this case is not controlled by, and is distinguishable from, *D. C. J.* and *A. C. L. R.* Mother essentially argues that in both of those cases, the TPR judgments were entered *in absentia*—after the parents did not appear personally or through counsel. Mother argues that, in contrast, she appeared at

the January 8, 2024, hearing via Webex and also appeared through counsel.

The facts of this case differ from our previous cases in which we have considered the appealability of TPR judgments under ORS 19.245(2). In *D. C. J.* and in *A. C. L. R.*, the parents did not appear at all as required by the summons, and we concluded that the resulting default judgments were not appealable. In *S. C. T.* and in *B. P.*, each parent had appeared at the initial TPR hearing to respond to the petition, but they failed to appear at a subsequent hearing. In those cases, we concluded that the parents had previously answered the petition, and the TPR judgment were therefore appealable. Here, mother failed to attend the hearing in person as directed by the summons; however, she did connect with the court via the court's Webex system at the time set for the hearing. The court acknowledged mother's presence by questioning her and also appointed an attorney to represent her in the TPR case. The court allowed mother's attorney to make arguments on mother's behalf, and that attorney objected to the court conducting a *prima facie* case. It is clear from the record that mother did not "consent" to the entry of the TPR judgment. Under these circumstances, especially considering the fact that the court appointed an attorney for mother and allowed mother's attorney to participate in the pretrial portion of the hearing, we conclude that ORS 19.245(2) does not bar mother's appeal.

We turn to the merits. As noted above, mother raises 40 assignments of error, which reduce to several arguments about procedural errors that mother contends the juvenile court made.[7] In a combined argument, mother asserts that the court's "good cause" ruling was incorrect (assignments one through ten), that the court erred in denying her motion to appear via Webex (assignments eleven through fifteen), that the court erred in denying her request for a continuance (assignments sixteen through twenty), that the court

---

[7] We note that ORAP 5.45(3) provides that "[e]ach assignment of error must identify precisely the legal, procedural, factual, or other *ruling* that is being challenged." (Emphasis added.) Not all of mother's assignments comply with ORAP 5.45(3) and some are more accurately characterized as arguments in support of an assignment of error to a ruling. We address in this opinion assignments of error that properly challenge the juvenile court's rulings.

erred in proceeding with a *prima facie* trial (assignments twenty-one through twenty-five), that the court erred in not allowing mother to participate (also labeled as assignments twenty-one through twenty-five), that the court erred in proceeding to adjudicate the TPR petitions under ORS 419B.819 (assignments twenty-six through thirty), and that the court erred in terminating her parental rights to her five children (assignments thirty-one through thirty-five).

Because it is dispositive, we begin with mother's contentions that the juvenile court erred in proceeding with a *prima facie* trial and entering the TPR default judgments. Mother argues that the juvenile court erred in adjudicating the TPR petitions in the circumstances of this case because she was not "absent" as contemplated by ORS 419B.819(7), which states, in part,

> "*If a parent fails to appear for any hearing* related to the petition, or fails to file a written answer, as directed by summons or court order under this section \*\*\*, the court, without further notice *and in the parent's absence, may*:
>
> "(a)   *Terminate the parent's rights* \*\*\* and
>
> "(b)   Take any other action that is authorized by law."

(Emphases added.) Mother relies on our statutory interpretation and application of subsection (7) in *Dept. of Human Services v. A. D. G.*, 260 Or App 525, 317 P3d 950 (2014) in support of her contention.

In *A. D. G.*, the mother had failed to appear at certain pretrial hearings and the court entered default orders as to her two children. *Id.* at 527, 529. On the date that the court had scheduled a *prima facie* TPR trial, the mother appeared in person at court. *Id.* at 529. The court explained to her that default orders had been entered and that meant that she was not entitled to be heard. *Id.* The court told the mother that she had to stay back in the audience and allowed DHS to proceed with its *prima facie* case without the mother's participation. *Id.* at 530. The mother moved to set aside the default judgment under ORS 419.923(8), which the juvenile court denied; we reversed and remanded. *Id.* at 532, 547-48.

As part of our analysis, we considered the meaning of ORS 419B.819(7), which the juvenile court had applied "to bar mother from participating in the *prima facie* hearing that resulted in the default TPR judgment against her, even though she was present and attempted to participate in that hearing." *Id.* at 541. DHS took the position that the phrase in subsection (7), "and in the parent's absence," meant "without the parent's participation"—*i.e.*, that once the parent failed to appear at any pretrial hearing, the juvenile court could terminate that parent's right "without further notice and without the parent's participation" regardless of whether the parent appeared at a later date. *Id.* at 541-42. Ultimately, we acknowledged that "[d]ue process demands a termination that is fundamentally fair, and the essence of fundamental fairness is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 546. We concluded that the juvenile court had erred:

> "Here, [the] mother was physically present at the termination fact-finding hearing and attempted to participate and contest the termination of her parental rights. The juvenile court nevertheless ruled that ORS 419B.819(7) authorized it to enter a default judgment against [the] mother at the December 18 TPR hearing that she attended, because she had earlier failed to appear. Because we hold that ORS 419B.819(7) only authorizes a juvenile court to enter a TPR default judgment against a parent at a proceeding at which that parent is absent, we conclude that the juvenile court committed legal error when it terminated [the] mother's rights on the basis that the court articulated."

*Id.* at 546-47 (footnote omitted).

Here, mother contends on appeal that the court allowed DHS to proceed to prosecute its petitions against mother as if she was not there at all even though she remained present via Webex for the entirety of the proceeding and that it was error for the court to do so. In response, DHS argues that mother was not physically present at the hearing, and thus, she failed to appear for purposes of ORS 419.819(7). DHS asserts that that fact makes this situation distinguishable from the circumstances in *A. D. G.*, and points to the juvenile court's clarification of its findings when the parties were discussing language to be included in

the judgments: "I was finding that [mother] did not appear in terms of making a legal appearance that was valid on an initial petition. But she was present via WebEx."

As part of our statutory construction in *A. D. G.*, we reviewed the dictionary definitions of "absence" and "absent." We stated that

> "being absent is different from not participating. The noun 'absence' is defined as the 'state of being absent or missing from a place' and 'failure to be present (as in an accustomed place) or where one is needed, wanted, or normally expected.' *Webster's* [*Third New Int'l Dictionary* 6 (unabridged ed 2002)] (listing 'nonattendance' and 'nonappearance' as synonyms). 'Absent,' in turn, means 'not present or not attending.' *Id.*"

*A. D. G.* 260 Or App at 542. We explained that "DHS reads the statute's authorization to terminate a parent's rights in that parent's *absence* as authorization to terminate even in a parent's *presence*. DHS's interpretation of ORS 419B.819(7) is irreconcilable with the ordinary meaning of 'in the parent's absence.'" *Id.* at 542 (emphases in original).

DHS's argument is focused on the first part of ORS 419B.819(7), which states that "[i]f a parent fails to appear for any hearing *** *as directed by summons*" then the court may terminate the parent's rights. (Emphasis added.) In its view, because mother was summoned to personally appear, but failed to be physically present in the courtroom, the juvenile court was permitted to terminate her rights. The problem with that construction, however, is that it ignores the clause in the statute that provides that the court may terminate the rights "without further notice *and in the parent's absence*." (Emphasis added.) As we explained in *A. D. G.*, "the construction that DHS urges would have the effect of rendering the phrase 'in the parent's absence' meaningless surplusage. *** As a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions." 260 Or App at 542-43 (internal quotation marks omitted).

Under the circumstances here, where mother had access to a Webex link to connect her to the court proceeding and utilized that ability to connect remotely, we cannot conclude that mother was absent in the sense that she was not

attending. *See id.* at 542 (setting out dictionary definition of "absent"). Although mother did not attend the hearing in person as directed by the summons, and the court explained that it did not consider mother to be making a legal appearance that was valid, mother was present via Webex for the entire proceeding. The juvenile court engaged in a discussion with mother, appointed an attorney to represent mother in the TPR proceedings, allowed mother's attorney to present argument in the pretrial portion of the hearing, and, apparently, permitted mother and her attorney to remain connected via Webex for the remainder of the proceedings. Mother was not sitting in the back of the courtroom, as the mother was in *A. G. D.*; however, she was present to observe the proceedings via Webex. Given that background and considering that "[d]ue process demands a termination that is fundamentally fair," *id.* at 546, we conclude that the juvenile court erred in utilizing the procedure provided by ORS 419B.819(7) to enter TPR default judgments against mother in her remote presence. We therefore reverse and remand those judgments.

Given that disposition, we need not reach mother's assignments of error that are directed at the juvenile court's findings and decisions in the pretrial portion of the hearing.

Reversed and remanded.